116    527 ⌉
  20 SC ¹125 ⌋

# MARTIN L. YOST v. JACOB L. GRIM.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON
COUNTY.

Argued March 11, 1887—Decided March 21, 1887.

1. A clear, distinct and unequivocal acknowledgment of a debt is suffi-
   cient to take a case out of the statute of limitations. Such an acknowl-
   edgment being proved, the law will imply the promise to pay without
   its having been expressly made.
2. There was evidence that the specific statement of the account, for the
   recovery of which suit was brought, was exhibited by the plaintiff to
   the debtor and the items got for the latter distinctly pointed out to him;
   that the debtor then made a payment thereon, and made no objection to
   the existence and validity of any of the items thus designated: *Held*,
   sufficient to justify the submission to the jury to find that defendant
   admitted the bill to be right and acknowledge his liability therefor.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STER-
RETT, GREEN and CLARK, JJ.

No. 260 January Term 1887, Sup. Ct.; court below, No. 54
June Term 1884, C. P.

From a judgment in favor of Jacob L. Grim against Dr.
Martin L. Yost before a justice of the peace, the defendant
took an appeal. The cause was put at issue *sec. reg.* under the
plea of *nil debet*, and the plea of the statute of limitations
was added subsequently.

On the trial October 28, 1886, before W. W. SCHUYLER, P.
J., it was shown that in April 1873, Grim, the plaintiff, who
was a miller, had a settlement with Dr. Yost, the defendant,
of an account for horse-feed furnished. At this settlement,
Dr. Yost informed Grim that he had gone into the lumber
business with his brother-in-law Moritz; that Yost & Moritz
also would get their feed from Grim, who should charge the
whole to the individual account of Dr. Yost, but with the
items that went to Yost & Moritz marked so as to identify
them. This was done. Grim got some lumber from Yost &
Moritz, and Dr. Yost, as before, got his horse-feed from Grim

Statement of Facts.

which was charged in his individual account, running from May 10, 1873 to April 9, 1877. Yost & Moritz also got feed from Grim, which under said arrangement was charged to Dr. Yost's account, but marked after each item, "Yost & Moritz."

On May 22, 1878, Grim met Dr. Yost for a settlement with an itemized statement of his account, and, after deducting the lumber bill of Yost & Moritz against Grim, the balance was $129.39 in Grim's favor. At this time Dr. Yost gave Grim his check for $54.92. Grim, the plaintiff, testified on direct examination :

Q. What did he say then? A. Well, he didn't say anything then, he wanted to know what goods he personally got for himself and I told him I could not tell him exactly what except these lower items for the seed wheat and for the seed rye, etc., and then we looked over it awhile and I told him this bill is made out Jan. 1, 1887 until here, and then he figured out and then " Well," says he, " I and Mr. Moritz are two, we are not friends together, we don't speak together and I don't get along with Mr. Moritz and now I'll give you a check and then you go to Mr. Moritz and get some out of Mr. Moritz," and I told him I couldn't go to Mr. Moritz because I didn't have it charged to him in my ledger that way ; that I had charged him, Dr. Yost, with it, and he said they were not on good terms and they would not speak and I should go and see him and collect it out of him, and I told him I would do so provided I could, and the next time I saw Dr. Yost I told him that I couldn't collect anything and I wouldn't do it that way.

Q. Did you go and see Mr. Moritz? A. I did. . . . . .
Q. Did you see Dr. Yost again after that before you brought suit? A. Yes, I saw him again and again. Q. When you saw him what did you do? A. I told him, "Doctor, I ought to have money." Q. What did he say? A. He said, "You have to go to Moritz and try and get some out of Moritz." Q. Did he tell you that several times? A. Yes, and at last I met him in Bethlehem, driving along in his carriage, and I said to him, "Doctor if you don't pay that bill, I am going to bring suit, I don't let it run out of law, it's now near time," and then he told me I shouldn't bring suit, that I should put it to a justice of the peace and then they would come to-

gether, he and Moritz, and then I took it to Charley Mauch, the justice of the peace, and Dr. Yost was notified.

On cross-examination the plaintiff testified:

Q. Why was it that the check was given for $54.92 and not for just $54.00. A. Why, he wanted to know what he got individually and I told him I couldn't tell on this bill, that I hadn't the books with me, that if I had the books with me I could tell—but here is the marks yet that were made with my pencil, and I said " I know that *this* hundred you got out on the farm private where the lead pencil mark is," and then he figured up a little and says he, " I'll give you my check now for $54.92, and I and Moritz are not on speaking terms and you try and collect that from him."

Q. You say that after some figuring and talking to find out what Yost got himself you came to this amount of $54.92, and after that he gave you a check for that amount. A. Yes, he figured out and told me that he would give me a check for that amount. Q. Was that the amount you and he made out that he had got individually ? A. No, I told him I couldn't tell the amount he got. Q. You say you marked some there ? A. Only *this here*—but this don't count up to that figure—he wanted to know and I could not tell. Q. You tried to ascertain that ? A. Yes. Q. And after figuring and trying to ascertain that he came to the conclusion that that was the amount and he gave you a check for that amount. A. He gave me a check for $54.92. Q. That was to be for his individual account as you understood it at that time ? A. No, sir.

The defendant, Dr. Yost, called in his own behalf, denied the testimony of the plaintiff as to what occurred at the giving of the check, and testified that the check was given for his own part of the bill, in which testimony he was corroborated by his wife, Mrs. Julia Yost.

The following points were presented by the defendant with the answers thereto :

1. Under all the evidence the verdict must be for the defendant.

Answer. I can not affirm this point.[1]

2. If the jury believe the testimony of Mrs. Yost, the verdict must be for the defendant.

Answer. This point I affirm. If you believe the testimony of Mrs. Yost as to what took place at the time the check for $54.92 was given, then your verdict must be for the defendant.

3. The claim of the plaintiff, on its face, is barred by the statute of limitations, and unless the defendant within six years from the time suit was brought, clearly, distinctly and unequivocally acknowledged the whole debt to be due, the verdict must be for the defendant.

Answer. This point I affirm with this qualification, that the acknowledgment need not be express, that is, he need not say so in so many words—" I acknowledge this debt to be due." Payment on account is a constructive acknowledgment, and if you are satisfied that this money was paid on account of the balance for which the present suit was brought, and if you can say that without any hesitation from all the evidence in the case, then that would be such a sufficient acknowledgment as would take this claim out of the statute. But if you have any hesitation you must give the benefit of your doubt to the defendant.

The court charged the jury in part:

You will see from these authorities, gentlemen, that the acknowledgment relied upon by the plaintiff to take this claim out of the statute of limitations must have been made by the defendant, and that the evidence that he intended to acknowledge the existence of the debt in suit, must be so clear and so distinct and so full, that in considering it it will leave you without any hesitation or doubt upon the subject.

[Now take the evidence as given by Jacob L. Grim himself and consider whether that, assuming it to be true, would justify you in finding that the defendant did acknowledge the existence of the debt. Mr. Grim testifies upon that subject as follows: (Reads from direct and cross-examination of J. L. Grim.) Now this is the account given by the plaintiff himself, and is the only evidence, so far as I remember, bearing upon what took place at Dr. Yost's office at the time the check for $54.92 was given; the only evidence given by the plaintiff bearing upon what took place at that time.

Throwing for the present out of the case all the other evidence, can you say. from what Mr. Grim says, that this giving of the check for $54.92 was such a clear and distinct acknowl-

Charge of Court below.

edgment on the part of the defendant that the whole bill that was presented at that time was his individual bill. Was his evidence upon that point so clear and distinct that you can say without hesitation that the defendant, by the payment of the $54.92, intended to acknowledge his liability for the full amount of the bill?] [2] In this connection you are also to take into consideration the evidence with reference to what took place, before any of these goods were furnished, between the plaintiff and the defendant.

Mr. Grim says on that subject: (Reads.) You will see from this that the account made out against Dr. Yost, and which is in suit here, is made up of flour and feed furnished, in the first place, to Dr. Yost himself individually, and, in the second place, to the firm of Yost & Moritz; and, in weighing and sifting the testimony of Mr. Grim as bearing upon this point, you will also take that into consideration, and will say whether or not this evidence satisfies you beyond hesitation, that when Dr. Yost gave the check for the $54.92, he intended to clearly and distinctly acknowledge his liability for the whole bill. This is the situation of the case so far as the testimony of Mr. Grim is concerned. But that is not all the testimony in the case. If you find that this was a distinct and unequivocal acknowledgment on the part of Dr. Yost from the testimony of Mr. Grim, then your next inquiry will be whether this testimony of Mr. Grim is true, and you will consider that question without any reference whatever to the effect that your decision may have upon either the credibility or character of Mr. Grim, or of Mr. Yost and his wife. You are to take the evidence as it has been delivered to you, and without reference to consequences you are to determine what is true and what is not true.

Now, Dr. Yost testifies, in a general way, that this $54.92 was not paid on account. He alleges—that is the theory of the defence, that it was paid in discharge of his full individual indebtedness to the plaintiff, and that it was not paid on account at all; but that it was paid in full of his individual indebtedness, leaving the balance of the account as the claim of the plaintiff against the firm of Yost & Moritz; and you will in this connection also take into consideration the testimony of Mrs. Yost, who says that when this claim was presented by

Mr. Grim, Dr. Yost said : " Why, I did not get all this flour and feed individually," and that as a result of this remark she went and got a piece of paper and that there was then put down upon this piece of paper the items that had been received by Dr. Yost individually, and that this check was given in payment of that amount which footed up, as she testifies, $54.92. If you believe the testimony of Dr. Yost, and the testimony of his wife as bearing upon this part of the case, your verdict would have to be for the defendant, be the consequences to the plaintiff what they may. . . . . .

[If you are satisfied that this was a firm debt to begin with, and that Dr. Yost agreed on May 22, 1878, that the bill was right, acknowledged his liability for it, then your verdict would be in favor of the plaintiff, provided the evidence is such as satisfies you beyond hesitation that such was the fact.] [3]

The jury found in favor of the plaintiff for $112.06, afterwards reduced by a *remittitur* to $51.58, whereupon the defendant took this writ, specifying as error :

1. The refusal of defendant's point. [1]

2. The submission to the jury of the question of law as to whether the evidence of the plaintiff alone was sufficient, if true, to take the case out of the statute of limitations, in that part of the charge in [ ] [2]

3. In charging the jury as in [ ] [3]

*Mr. Robert L. Cope*, for the plaintiff in error :

The only question is whether the evidence was sufficient to submit to the jury the question of fact, whether the defendant did acknowledge his liability for the whole of the plaintiff's claim, *infra sex annos.*

1. This court in construing this statute, have added to it a provision that if the defendant within six years acknowledge the claim in a clear, unequivocal, unambiguous and unqualified manner, so as to imply a new promise and be consistent with a promise to pay, such an acknowledgment shall avoid the statute ; the ground being that by such an acknowledgment the defendant *waives* the benefits of the act : Suter v. Sheeler, 22 Penn. St. 308 ; Bolton v. King, 105 Idem 78. But one cannot be said to waive a legal right unless his intention to do

so clearly appears either by his acts or words; and "if there be circumstances accompanying an acknowledgment which *repel* the presumption of a promise or intention to pay, or if the expression be equivocal, vague and indeterminate, leading to no certain conclusion, but at best to possible inference which may affect different minds in different ways, they ought not to go to a jury as evidence of a new promise to revive the cause of action ": 2 Greenl. Ev. § 440; "this is surely settled in this state ": STRONG, J., in Shaffer v. Shaffer, 41 Penn. St. 51.

Does not the request of Dr. Yost to collect some of the bill from Moritz clearly repel the presumption of a present intent to pay the whole claim himself? Senseman v. Hershman, 82 Penn. St. 83. And if there was an acknowledgment of a balance, how much was the balance? Certainty is an essential of an acknowledgment: Huff v. Richardson, 19 Penn. St. 388.

2. If the question was for the jury to decide, all the evidence should have been submitted to them on this point. The court confined them to the evidence of the plaintiff alone. The other evidence was submitted merely as bearing upon the credibility of Mr. Grim and the truth of his testimony. But the sufficiency of the evidence, assuming it to be true, was clearly for the court and not for the jury: Shaffer v. Shaffer, 41 Penn. St. 51; Senseman v. Hershman, 82 Idem 83; Landis v. Roth, 109 Idem 621. And see Eckert v. Wilson, 12 S. & R. 393.


*Mr. W. E. Doster*, for the defendant in error:

It was said in Palmer v. Gillespie, 95 Penn. St. 344: " It is not essentially necessary that the promise be actual or express, provided the other necessary facts are shown. A clear, distinct and unequivocal acknowledgment of a debt is sufficient to take a case out of the statute of limitations. It must be an admission consistent with a promise to pay. If so, the law will imply the promise, without its having been actually or expressly made. There must not be any uncertainty as to the particular debt to which the admission applies. It must be so distinct and unambiguous as to remove hesitation in regard to the debtor's meaning." See the other cases cited in that opinion on page 344. The case of Landis v. Roth, 109 Penn. St. 621, relied on by the other side, is a distinct affirmation of the law as laid down in Palmer v. Gillespie.

OPINION, MR. CHIEF JUSTICE MERCUR :

It ·is settled law in Pennsylvania that a clear, distinct and unequivocal acknowledgment of a debt is sufficient to take a case out of the statute of limitations. Such an acknowledgment being proved, the law will imply the promise without its having been actually made : Palmer v. Gillespie, 95 Penn. St. 344.

In the present case the evidence was sufficient to justify the finding of the necessary facts. The plaintiff below testified that the specific statement of the account, for the recovery of which this suit was brought, was by him exhibited to the debtor, and the items got for the latter distinctly pointed out to him ; that he thereupon made a payment thereon, and made no objection to the existence and validity of any of the items thus designated. This evidence justified the submission to the jury to find that he admitted the bill to be right and acknowledged his liability therefor.

Judgment affirmed.