# Law *v.* Waldron, Appellant.

*Insurance—Fire insurance — Receivers — Contracts — Principal and agent.*

1. Where a receiver is appointed to take control of all the property of a corporation and to assume the entire management of its affairs, the corporate officers are thereby suspended, and in respect of compensation for services thereafter the corporation is guilty of no breach of contract, since the order of the court operates on both parties alike and prevents the officers and agents from interfering with the receiver's management, and performance of contracts for services to the corporation would be illegal.

2. This rule is peculiarly applicable to an insurance company engaged in business which could not be conducted by receivers, and whose receivership is forced by large and unexpected losses, and not brought about for the purpose of ending contracts with agents.

*Affidavit of defense—Practice—Precision—Set-off.*

3. Affidavits of defense should aver the facts depended upon with reasonable precision and distinctness. Averments of set-off must be as specific as those used in a statement of claim. The defendant in respect to such a claim is the actor, and the obligation is upon him to aver his set-off in terms incapable of being misunderstood. An affidavit of defense is to be taken most strongly against the defendant, for it is to be presumed that he has made it as favorable to himself as his conscience would allow him.

*Affidavit of defense—Judgment for part appearing to be due—Act of July 15, 1897, P. L. 276.*

4. Before entering judgment under the Act of July 15, 1897, P. L. 276, the court of common pleas ought to see that the items which it holds to be insufficient are enumerated in the rule for judgment or specially indicated in the written adjudication of the court.

Argued Jan. 3, 1911. Appeal, No. 95, Jan. T., 1910, by defendant, from order of C. P. No. 1, Phila. Co., Dec. Term, 1909, No. 2,653, making absolute rule for judgment for want of a sufficient affidavit of defense in case of John H. Law and George W. Law, copartners, trading as Law Brothers, Trustees for the Royal Insurance Company, Ltd., of Liverpool, England, v. Alfred M. Waldron. Be-

fore FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN,
STEWART and MOSCHZISKER, JJ.   Affirmed.

Assumpsit to recover balance alleged to be due by an
agent.

The material averments of the statement of claim and
the affidavit of defense are set forth in the opinion of the
Supreme Court.

The court by BRÉGY, P. J., filed the following opinion:
This is a rule for judgment for so much of the amount
claimed in the plaintiffs' statement as to which the affi-
davit of defense is insufficient, but as the rule itself does
not set out the items it becomes the duty of the court, if
it thinks the rule should be made absolute under Pierson
v. Krause, 208 Pa. 115, to set them out.

The defendant was the local agent in Philadelphia and
the surrounding counties of the German National Insur-
ance Company and the German Insurance Company of
Freeport.   These companies went into the hands of re-
ceivers on November 19, and 20, 1906, and thereafter
defendant rendered accounts showing that $7,137.19 was
due the companies, but making certain claims in the nature
of offsets, these not being allowed, and the rights of the
insurance companies having been assigned to the plain-
tiffs this suit was brought to recover $6,178.97, being the
above amount less certain allowances with interest from
November 20, 1906.   The defendant filed an affidavit of
defense in which he charged himself with $7,137.19, and
claimed the offsets set out in his accounts and certain
others, whereupon the plaintiffs took this rule.   The court
is of opinion that the amount admitted to be due by the
defendant, namely, $7,137.19, should have deducted from
it the following items, for which credits were asked in the
account rendered the German National Insurance Com-
pany, viz.: November balance, $11.61, contingent 1906,
as per schedule B, $358.15, and also the following items
for which credits were asked in the account rendered the

German Insurance Company of Freeport, viz.: November balance, $415.55, contingent 1896, as per schedule B, $752.11; $50,615 net reinsurance. Amount, as per bill, $2.52—$1,539.94. Leaving due the plaintiff, $5,597.25. That the remaining items claimed as credits by the defendant cannot be allowed under the contract.

According to the plaintiffs' statement, the total amount claimed, allowing part of the credits above mentioned, was $6,178.97, but as all of the above credits have been allowed in full, there must be deducted from that amount in addition, $581.72, leaving due as above, $5,597.25. The rule is therefore made absolute for this amount with interest from November 29, 1906, and judgment is entered for the plaintiff for $6,699.90.

*Errors assigned* were as follows: (1) The learned court erred in entering judgment for the plaintiffs for the sum of $6,699.90; (2) the learned court erred in not discharging plaintiffs' rule for judgment for the amount as to which the affidavit of defense was insufficient.

*Frank R. Shattuck*, with him *John Reynolds*, for appellant.—Under the Act of July 15, 1897, P. L. 276, the lower court cannot enter a valid judgment on a rule for the amount as to which the affidavit of defense is deemed insufficient, without giving reasons therefor: Pierson v. Krause, 208 Pa. 115; New York Trust Co. v. Langcliffe Coal Co., 227 Pa. 630.

The defendant is entitled to claim losses by reason of the breach of the contract though the companies had gone into the hands of a receiver; and further, the entire question of dispute between the accounts was one for the jury: Spader v. Mfg. Co., 47 N. J. Eq. 18 (20 Atl. Repr. 378); Bolles v. Drug Co., 53 N. J. Eq. 614 (32 Atl. Repr. 106); Bowe v. Milk Co., 44 Minn. 460 (47 N. W. Repr. 151); Rosenbaum v. U. S. Credit System Co., 61 N. J. L. 543 (40 Atl. Repr. 591); Merchants' & Mfrs. Nat. Bank v. Spratt & Co., 108 Pa. 97; Griffith v. Lumber Co., 55 W. Va. 604 (48 S. E. Repr. 442).

*C. Berkeley Taylor*, for appellees.—The loss of commissions by breaking the contract cannot be allowed, the break being the act of the law and not that of the parties and damnum absque injuria: People v. Globe Life Ins. Co., 91 N. Y. 174; Lorillard v. Clyde, 142 N. Y. 456 (37 N. E. Repr. 489); Mason v. Standard Distilling Co., 85 N. Y. App. Div. 520 (83 N. Y. Supp. 343); Labaree v. Crossman, 100 N. Y. App. Div. 499 (92 N. Y. Supp. 565); Stannard v. Reid Co., 114 N. Y. App. Div. 135 (99 N. Y. Supp. 567); Malcomson v. Wappoo Mills, 88 Fed. Repr. 680; Lenoir v. Linville Imp. Co., 126 N. C. 922 (36 S. E. Repr. 185); Griffith v. Blackwater Co., 46 W. Va. 56 (33 S. E. Repr. 125); In re United Mutual Fire Ins. Co., 22 R. I. 108 (46 Atl. Repr. 273); Dickinson v. Calahan, 19 Pa. 227; Schlater v. Winpenny, 75 Pa. 321; Louchheim v. Weighing Co., 12 Pa. Superior Ct. 55; Kern's Est., 176 Pa. 373; Blakely v. Sousa, 197 Pa. 305.

OPINION BY MR. JUSTICE MOSCHZISKER, February 27, 1911:

The plaintiffs took a rule for judgment for "so much of the amount claimed by the statement as to which the affidavit of defense is insufficient." The rule was made absolute and a judgment entered, from which the defendant has appealed.

In January, 1904, the defendant signed a contract with the German National Insurance Company, of Illinois, to act as its general agent in Philadelphia and vicinity, and in March, 1904, he entered into a precisely similar contract with the German Insurance Company, of Illinois. These contracts provide, art. I, for the appointment of the defendant as the general agent of the respective companies in the designated territory, with power, inter alia, to appoint subagents. Article II, " . . . . said first party agrees to pay said second party thirty (30) per cent commission on all net premiums written in said territory, whether by said second party or through agents appointed by said second party, and a contingent sum of money equal

to ten (10) per cent of the net profits of the business written . . . . in the territory . . . . to be computed on a basis of income and outgo, as follows:—income—Gross premiums less return premiums, amounts paid for rein-surance annually. Outgo-losses paid annually, after de-ducting reinsured losses collected; losses outstanding un-paid, insurance department fees, State and local taxes and licenses, State and local board expenses and all regular and approved incidental expenses of agents charged by agents and said second party to the first party." Arti-cle III: " . . . . said second party agrees to devote the necessary time to the interests of the said first party in the appointment and supervision of agents, inspection of risks, adjustment of losses and such general work pertain-ing to a general agent's occupation without further com-pensation. . . . . The said second party . . . . to assume all liability for balances of the agents and other representa-tives appointed in said territory by said second party, and agrees to hold said first party free from any and all loss or damage therefrom, and further agrees to remit . . . . (monthly) to said first party all balances due. . . . . It is agreed that this contract shall continue and remain in force so long as mutually agreeable to the contracting parties, and the same may be modified or terminated at any time at ninety days' notice by either party giving a written notice to the other of the intention to modify or terminate the same."

In November, 1906, both of the insurance companies went into the hands of a receiver appointed by the circuit court of Cook county, Illinois. The receiver by leave and under the instructions of the court sold the assets of the two companies to the Royal Insurance Company. At the request of the purchaser these assets, including the claims against the defendant, were duly assigned to the plaintiffs. In January, 1910, the plaintiffs brought the present ac-tion for $6,178.97, with interest from November 20, 1906. The statement of claim averred that the defendant, as agent of the German National Insurance Company, owed

monthly balances aggregating $1,583.01, against which he was entitled to a credit of "$328.87, Contingent commissions" and "$11.61 November balance," leaving $1,254.14 as the net amount due on that account; and that, as agent of the German Insurance Company, he owed monthly balances aggregating $5,554.18, less a credit of $629.35, "Contingent commissions," leaving $4,924.83 as the net balance due on that account. The defendant filed an affidavit of defense in which he admitted the balance of $1,583.01, but claimed set-offs as follows: (1) "November balance, $11.61;" (2) "Contingent 1906 as per schedule B, $358.15;" (3) "Loss of commission by Co. breaking contract as per schedule A, $378.54;" (4) "Commission on return premiums from March, 1906, to November, 1906, which was credited to the Company by error, $785.60;" (5) "Closing out agencies as per schedule C, $120.43;" (6) "Adj. expenses as per vouchers, $105.50;" (7) "Loss paid by A. M. Waldron, July 3, 1908, policy 468,337 . . . . not in reinsurance schedule . . . ., $23.30;" thus wiping out the entire $1,583.01 and showing $200.12 due the defendant. The defendant also admitted the balance of $5,554.18, but claimed as set-offs: (8) "November balance, $415.55;" (9) "Contingent 1906 as per schedule B, $752.11;" (10) "506,015 net reinsurance Am. as per bill, $2.52;" (11) "Loss of commission by Co. breaking contract as per schedule A, $1021.50;" (12) "Commission on return premiums from March, 1906, to November, 1906, credited to Company by error, $1,847.89;" (13) "Cochran Agency as per bill, $202.06;" (14) "Adj. expenses as per vouchers, $506.50;" (15) "Closing out agencies as per schedule C, $852.47;" thus wiping out the entire $5,554.18 and showing $46.42 due defendant. The court allowed items 1, 2, 8, 9 and 10; but refused items 5 to 7, inclusive, and 11 to 15, inclusive, holding the affidavit to be insufficient as to them.

The affidavit states what the defendant avers to be true accounts between himself and the two insurance companies, and these accounts contain the several items

claimed as set-offs. Of those allowed as a defense, items 1, 2 and 9 were conceded, either in whole or in part, in the statement of claim, while items 8 and 10 were not conceded. However, there is no complaint as to the items allowed, and with them we have no further concern. Those disallowed may be grouped in two classes; first, items 3, 4, 11 and 12, as claims growing out of what the defendant alleges to be a breach of the contracts; and, items 5, 6, 7, 13, 14 and 15, as claims due under the terms of the contracts.

Concerning the first class, the affidavit avers that the insurance companies did not notify the defendant of their intention to go into the hands of a receiver or intimate any desire to terminate the contracts; that the defendant was entitled to ninety days' notice, and that the discontinuance of business by the insurance companies without the giving of such notice constituted a breach of the contracts. As to items 4 and 12, the defendant admits that "had the plaintiff companies continued on with the business . . . . the claim of commissions on returned premiums must have been credited to the companies." As to items 3 and 11 the defendant contends that he is "entitled to a reasonable amount as damages for the breach of the contracts." In the schedules referred to in connection with these latter items, the basis of the figures claimed is shown to be a calculation of the daily average of the net premiums, and the multiplication thereof by ninety. Upon this product the defendant makes an arbitrary claim of fifteen per cent as the reasonable amount which he could have earned had the contract lasted ninety days longer. Aside from the question of the sufficiency of the averments covering these several items, or of the defendant's right to claim them as damages arising from the alleged breach, we are of opinion that, as a matter of law, the facts averred do not constitute a breach of the contracts.

In 34 Cyc. 267, the rule is stated, "Where a receiver is appointed to take control of all the property of the company and to assume the entire management of its affairs,

the corporate officers are thereby suspended, and in respect of compensation for services thereafter the corporation is guilty of no breach of contract, since the order of the court operates upon both parties alike and prevents the officers and agents from interfering with the receiver's management, and performance of contracts for services to the corporation would be illegal; this rule is recognized even though the corporation is not dissolved in the proceeding." We do not appear to have any Pennsylvania case directly on this subject, but in Louchheim v. Weighing Company, 12 Pa. Superior Ct. 55, it is held: "Where a corporation's charter is declared void for nonpayment of taxes and a receiver is appointed, a claim by its manager for services rendered after the date of the forfeiture cannot be allowed. . . . The contract relation is terminated . . . . as completely as by death of individual parties to the contract." And in Hammond's Appeal, 123 Pa. 503, we held that when an insolvent corporation has made an assignment for the benefit of creditors, upon acceptance by the assignee the relations of its officers to it are "effectually dissolved by operation of law." An examination of the cases from other jurisdictions, cited in 34 Cyc. 267, shows the rule as stated in the text to be supported in New York and other states, but not in New Jersey.

Whether or not this rule shall be applied seems to depend upon the circumstances in each case; but we are convinced that it is applicable to the facts in the case at bar. Here the insurance companies were engaged in a business which could not be conducted by receivers. It is one of the many instances where the appointment of a receiver would be in effect an injunction upon the further continuance of the business: Appeal of Newcastle & Franklin Rd. Company, 3 Walker, 281; Treat v. Penna. Mutual Life Insurance Co., 199 Pa. 326; and we must assume that the plaintiff, when he entered into the agreements with these corporations, knew and contemplated that in such a contingency his agency contracts would come to an end. The clause providing for the ninety days' notice was only

·applicable to a discontinuance of the contracts during the ·natural business life of the companies and cannot be construed to apply to the circumstances of the present case. There is not any averment in the affidavit of defense that the receivership was other than an entire one, that it was necessitated by the improper conduct of the corporations or their officers, or that it was brought about for the purpose of ending the contracts in question. In point of fact the defendant states that the business under the contracts was carried on with entire satisfaction until the earthquake in San Francisco "greatly impaired the finances of both insurance companies;" and, no doubt, that is the real explanation of their failure. There was no breach of the contracts on the part of the companies, and hence the items in question were properly disallowed.

Concerning the second class of items, we find no warrant in the contracts for items 5 and 15. As to items 6 and 14, the affidavit fails to aver that these are what is termed in the contracts, "approved incidental expenses," or otherwise to bring them within the provisions of the contracts covering allowances to the defendant; again, the vouchers referred to are not to be found in the record. Item 13 is so vaguely averred that it is difficult to tell exactly what is meant, but, from other parts of the record, it appears to cover premiums due by a subagent. If this is so, under the terms of the contracts, it is an improper charge against the insurance companies. Item 7 represents an insurance loss paid by the defendant some years after the receivership, but it is not averred with sufficient precision to enable us to determine whether or not it should be allowed.

Affidavits of defense should aver the facts depended upon with reasonable precision and distinctness: Markley v. Stevens, 89 Pa. 279. Averments of set-off must be as specific as those used in a statement of claim. The defendant in respect to such a claim is the actor, and the obligation is upon him to aver his set-off in terms incapable of being misunderstood: Loeser v. Warehouse, 10 Pa. Superior Ct. 540. An affidavit of defense is to be taken

most strongly against the defendant, for it is to be presumed that he has made it as favorable to himself as his conscience would allow: Comly v. Simpson, 6 Pa. Superior Ct. 12; Kemp v. Kemp, 1 Woodw. 154. With these familiar rules in mind, we cannot say that the court below erred in holding the present affidavit insufficient as to any of the items disallowed.

It is urged by the appellant that the record should be returned to the common pleas because of its failure to comply with the rule laid down in Pierson v. Krause, 208 Pa. 115. We are convinced by the brief opinion filed that the court below intended to bring itself within the letter of the rule in question. But the learned judges of that court would have greatly facilitated the work of review, had they given us the benefit of their own labors by a separate adjudication of the different items, or classes of items, held to be insufficient, with a brief statement of their reasons for so determining, instead of enumerating the items thought to be sufficient with a mere general disallowance of those held to be insufficient. Before entering judgment under the Act of July 15, 1897, P. L. 276, the common pleas ought to see that the items which they hold to be insufficient are enumerated in the rule for judgment or specially indicated in their written adjudication.

The assignments of error are overruled and the judgment is affirmed.