McKelvey, Appellant, *v.* Ligonier Township.

Argued May 6, 1937.

Before KELLER, P. J., CUNNINGHAM, BALD-

RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Edward Greb Bauer,* for appellant.

*James Gregg, of Gregg & Copeland,* with him *Wm. J. McDowell, Jr.,* for appellee.

OPINION BY JAMES, J., September 29, 1937:

On March 11, 1935 plaintiff brought suit in assumpsit to recover the sum of $600 for labor and materials furnished in the construction of a bridge across Loyalhanna Creek in the township of Ligonier, a second-class township. Plaintiff's statement averred that in the year 1926, at the special instance and request of the supervisors of Ligonier Township, he furnished labor and materials for the repair and construction of the bridge, and the supervisors promised and agreed they would pay over to him the sum of $600 as soon as the commissioners of Westmoreland County turned the same over to them. Defendant's affidavit of defense denied these averments and averred that if any such contract was made, the claim was barred by the statute of limitations. The point at which the bridge was built leads to a township road adjoining Ligonier Valley Fair Grounds, in which plaintiff was interested and where he had previously built temporary bridges. During the construction of the bridge, William McClintock,

one of the township supervisors, who was acting as superintendent in charge of the section in which the bridge was located, promised to render some help and "if they [the supervisors] could get help from the county they would be glad to pass on it and be glad to take the bridge over." Beyond this, plaintiff had no understanding to be reimbursed for his outlay. The minutes of the meeting of the supervisors, held September 26, 1925, show: "The supervisors also decided that as to the bridge the one constructed near the Fair Grounds would be used by the general public that they individually should furnish a few days' work in its construction." In the construction of the bridge, some labor was furnished by McClintock, but the greater part of the labor and materials, amounting to $1,500, was furnished by plaintiff. After the bridge was built, further discussions took place between plaintiff and the supervisors, which resulted in the supervisors, at a meeting held March 3, 1926, adopting a resolution to petition the county commissioners for county aid. The minutes of the meeting of the county commissioners, held January 7, 1926, show that a petition of the supervisors of Ligonier Township was presented requesting county aid on a bridge across the Loyalhanna Creek in the vicinity of Ligonier Valley Fair Grounds, and a resolution was adopted that "the county aid Ligonier Township in the construction of the said bridge in the amount of six hundred dollars ($600), it being understood that the maintenance and upkeep of the said bridge to be borne by the said Township of Ligonier." It will be noted that the meeting of the county commissioners antedated the meeting of the supervisors; that fact we regard as unimportant. A bill, dated March 27, 1926, for $600 "for aid authorized in erection of bridge in Ligonier Township," was sent by the supervisors to the county commissioners. On March 31, 1926, a county warrant was issued by the county commission-

ers, approved by the county controller, to W. C. Henderson, county treasurer for Ligonier Township supervisors, in the amount of $600. This amount was not paid to the supervisors, but was credited to a debt of $7,193.94, the county had against the township upon Lynn Run Bridge.

Subsequent to the issuance of the county warrant, unsuccessful efforts were made by plaintiff to obtain the $600 from the supervisors. The minutes of the meeting held May 25, 1929 are as follows: "At this meeting it was proposed and agreed that the supervisors in company with T. O. McKelvey go to see the Commissioners to try to effect a settlement in the matter of the bridge over Loyalhanna Creek leading to the Fair Grounds"; and of the meeting held June 29, 1929: "In the meeting arranged on May 25th, to go to the Commissioner's office with T. O. McKelvey to investigate the claim for building the bridge on the road to the Fair Grounds was called off and the said T. O. McKelvey was instructed to sue the supervisors and thus determine who, if any, are indebted for the same."

The record shows under the heading 'Defendant's points'; "1. Under all the evidence in the case, your verdict must be for the defendant. Answer: Reserved." The jury found a general verdict in favor of plaintiff in the sum of $600 with interest from March 31, 1926, and by special findings, found that there was a contract between plaintiff and defendant through McClintock representing the board of supervisors. On the point reserved, the court entered judgment n. o. v. in favor of defendant, plaintiff appeals.

In our examination of this record, we are unable to find that the township, either as a board or by one of the supervisors, originally contracted for any work done or materials furnished by plaintiff in the construction of the bridge. The real basis of plaintiff's claim is that the township received the sum of $600 from the county

to aid it in building the bridge, the cost of which had been borne almost entirely by plaintiff. A jury was fully warranted in finding that the money advanced by the county commissioners was to be repaid to plaintiff by the township. Such a transaction does not come within the provisions of the Act of May 17, 1921, P. L. 857, relating to second-class townships, which provide: "No purchase of materials, and no purchase of equipment and machinery, which shall involve the expenditure of more than one hundred dollars ($100) shall be made except by contract in writing." The township did not purchase materials, equipment or machinery; its agreement was to pay the plaintiff the money received by it from the county to reimburse him for work done and materials furnished. Otherwise, the township was not entitled to any funds from the county as it had not expended any such sum as $600 in the construction of the bridge. Having received money, whether in cash or by way of credit, for disbursements made by plaintiff, the township was at least under a moral obligation to pay him the $600. Such an obligation will support an express promise to pay: *Walthour v. McDowell,* 109 Pa. Superior Ct. 118, 165 A. 746.

But we are faced with a more difficult proposition. Whatever claim plaintiff had against the township arose as of the date when the moneys were credited by the county to the account of the township, to wit, March 31, 1926. Yet suit was not instituted until March 11, 1935. Does the record contain sufficient testimony to toll the statute of limitations? " 'A clear, distinct and unequivocal acknowledgment of a debt as an existing obligation such as is consistent with the promise to pay is sufficient to toll the statute. There must, however, be no uncertainty either in the acknowledgment or in the identification of the debt, and the acknowledgment must be plainly referable to the very debt upon which the action is based, and must be con-

sistent with the terms to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time. The time of payment need not be immediate but the intention to pay must be present: *Maniatakis' Est.*, 258 Pa. 11': *Thomas v. Sweeney*, 75 Pa. Superior Ct. 322, 324"; *Cappuccio's Estate*, 120 Pa. Superior Ct. 53, 57, 181 A. 868. Plaintiff testified that at different times he met with the supervisors with reference to the payment of the $600. At a meeting held in 1927, William Carns, one of the supervisors, said, "they wouldn't want to pay this $600 unless showed legally." The minutes of the meeting of May 25, 1929 merely show an effort to arrive at a settlement of the claim, and the minutes of June 29, 1929 show not only that the supervisors did not acknowledge the debt, but they directed suit be brought to determine who was indebted for the same. Even after this notice, suit was not brought for nearly six years. After suit was instituted, a meeting was had by plaintiff with the supervisors, at which meeting, according to plaintiff's testimony, "They agreed before we came up here if I would show them the check had actually been written, that they would pay the bill as soon as we showed the check had actually been written; why they then come in with the plea then it wasn't written for me." Under this testimony, we are unable to find such an acknowledgment of the debt as would toll the running of the statute.

Our examination of the printed record does not support plaintiff's contention that the point for binding instructions, presented by defendant, was not written but was dictated verbally to the court stenographer. In the first opinion filed by the court below, it was stated that a point for binding instructions was submitted by defendant, and in the second opinion filed, reference was made to the point reserved. Nor was this question raised in the court below. It has been repeatedly held

that a question not raised in the court below cannot be availed of in the appellate court: *Coral Gables, Inc. v. Jones et al.,* 323 Pa. 425, 187 A. 434.

Judgment affirmed.