**KEIM et al. v. O'BRIEN et al.**

No. 1125.

District Court, E. D. Pennsylvania.

Sept. 23, 1942.

Franklin E. Barr, of Philadelphia, Pa., for plaintiffs.

George F. Coffin, Jr., of Easton, Pa., for defendants.

KALODNER, District Judge.

The issues having come to trial before me on complaint and answer, and having heard the testimony of witnesses and argument of counsel, I make the following

### Findings of Fact

1. The Independence Indemnity Company conveyed all of its assets to International Re-Insurance Corporation (hereinafter called the Insurance Company) on October 31, 1932, and the Insurance Company assumed all liability and contracts of the Independence Indemnity Company on October 31, 1932.

2. The Insurance Company was duly adjudicated insolvent by decree of the Court of Chancery of the State of Delaware on April 18, 1933, on which date Receivers were appointed for said corporation.

3. W. F. O'Brien was duly licensed as an insurance agent by the Commonwealth of Pennsylvania for the years 1931, 1932 and 1933.

4. W. F. O'Brien, Inc. (hereinafter called the defendant), was at all times during the years 1931, 1932 and 1933 a corporation duly organized and existing under the laws of Pennsylvania, and W. F. O'Brien was during such period the president of said company.

5. On or about April 1, 1931, W. F. O'Brien, for and on behalf of W. F. O'Brien, Inc., entered into an oral con-

tract with the Independence Indemnity Company whereby the latter company authorized W. F. O'Brien, Inc., to write insurance and place insurance policies for the Independence Indemnity Company.

6. It was agreed by and between the parties that defendant should make a rate of insurance premium on all bus lines and taxicab lines, make all inspection and do all the handling of that type of business, and it was further agreed between the parties that no cancellations would be made by the company but that the cancellations would be made by the office of W. F. O'Brien, Inc., after inspection of the various risks which according to the records of the defendant showed a poor loss ratio.

7. It was further agreed between the parties that the Independence Indemnity Company would pay to defendant commissions for placing and writing insurance at the following rates on all policies of insurance written for the Independence Indemnity Company directly through the offices of W. F. O'Brien, Inc., and sold or placed by W. F. O'Brien, Inc., with assured. Commission on bus, taxi and passenger carrying business was to be 20%; on surety, 30%; on burglary, 30%; on plate glass, 35%; on workmen's compensation, 17½%; miscellaneous liability, 25%.

8. It was further agreed between the parties that a contingent commission calculated from the first of the year to the end of the year of 10% on the net profit shown of the business handled directly by defendant through its Easton (Pennsylvania) and Baltimore (Maryland) offices would be paid by the Independence Indemnity Company, to be determined by the company after the deduction of commissions, losses, loss reserve, premium reserve, underwriting losses, taxes, and administration expenses of 15%.

9. It was further agreed that defendant would act as the United States Agency for the Independence Indemnity Company and supervise whatever insurance was placed on passenger carrying business, including bus and taxi lines, anywhere in the United States, and on such business which was written through any branch offices of the Independence Indemnity Company, said defendant would receive a commission of 7½%, referred to as an "overwriting commission", in return for supervision of such risks.

10. It was further agreed between W. F. O'Brien, for and on behalf of W. F. O'Brien, Inc., and the Independence Indemnity Company, that in the event that the company cancelled a policy, W. F. O'Brien, Inc., would receive the gross or full commission for the full term of the policy on any business except such as defendant voluntarily cancelled itself, when it would receive only the commission on the earned portion of the premium, and this arrangement was in return for the inspection expense and supervision efforts of defendant throughout the country.

11. The Insurance Company at no time exercised its right to cancel policies placed by the defendant.

12. The premiums collected by the defendant were almost entirely paid to it in monthly installments.

13. It was the defendant's duty to cancel policies for non-payment of premiums.

14. The premiums on the insurance which the defendant placed were collected by the defendant and deposited by defendant in its bank account and commingled with the other funds of the defendant.

15. The defendant prior to the receivership from time to time accounted to the insurance company and made remittances on account of the amount due to the insurance company.

16. At the time of the receivership (April 18, 1933) the defendant had outstanding policies placed with the insurance company in yearly premiums totaling $410,314.31.

17. At the time of the receivership of the insurance company, the defendant had collected and not remitted premiums totaling $104,584.82 of the outstanding policies.

18. On September 27, 1934, the defendant executed a proof of claim against the receivership of the insurance company, which it filed on October 1, 1934, with the Chancery Court of the State of Delaware.

19. The proof of claim filed with the Chancery Court of the State of Delaware contained an itemized accounting between the defendant and the insurance company as of April 18, 1933 (the date of the receivership), and debited the account with commissions on the total outstanding insurance (i.e., $410,314.31) and other charges asserted as due from the insurance company, and credited same with the $104,584.82 in the defendant's hands which it had collected on account of premiums

(Finding No. 16), and claimed a balance due from the estate of the insurance company in the sum of $21,097.33. The following is the summary of the defendant's proof of claim as filed in the Delaware Chancery Court:

W. F. O'Brien Agency
Statement of Account
with
Independence Indemnity Company
April 18, 1933

|  | Debit | Credit |
|---|---|---|
| Accrued Commission — Easton Office (Schedule A) | $ 47,297.42 | |
| Accrued Commission — Baltimore Office (Schedule B) | 35,250.11 | |
| Cash Payments made on Account (Undistributed) | 17,188.62 | |
| Legal Expenses—Penna., January 1, 1933 to April 18, 1933 | 400.00 | |
| Contingent Commission for year 1933 | 9,819.77 | |
| United States Agency—Overwriting Commission—Public Carrier Business January 1, 1932 to April 18, 1933 (Schedule D) | 15,726.23 | |
| Amount Collected on Balance of yearly premiums— | | |
| Easton Office (Schedule A) | | 51,503.77 |
| Baltimore Office (Schedule B) | | 53,081.05 |
| | $125,632.15 | $104,584.82 |
| Less Credits (Contra Account) | | 104,584.82 |
| Balance Due W. F. O'Brien Agency | $ 21,097.33 | |

20. The date of the filing of the present suit is September 20, 1940.

## Discussion

The controversy on its merits involves the question whether the defendant is entitled to the accrued commissions on the total premiums of all the outstanding policies which it had placed at the time of the receivership, or only on the premiums on which it had actually collected payment at that time.

An examination of the summary (as set forth in Finding of Fact No. 19) discloses that the defendant debited the account between itself and the insurance company with $47,297.42 (Easton office) plus $35,-250.11 (Baltimore office)—a total of $82,-547.53—representing the commissions on all the premiums whether collected or uncollected. The plaintiff wishes to give the defendant credit in the sum of $21,945.01 for commissions only on the collected premiums, and claims a balance due to plaintiff in the sum of $39,505.19. The following is a statement of the account as asserted by plaintiff:

| Premiums collected by defendant | | $104,584.82 |
|---|---|---|
| Commissions at the rate of 21% | $21,945.01 | |
| Cash payments | 17,188.62 | |
| Legal expenses | 400.00 | |
| Contingent commission | 9,819.77 | |
| Overwriting commission | 15,726.23 | |
| | | 65,079.63 |
| Net balance claimed by plaintiff as due from defendant | | $ 39,505.19 |

It is the defendant's contention that inasmuch as receivership and insolvency of the insurance company operated as a cancellation of the outstanding policies (Law v. Waldron, 230 Pa. 458, 79 A. 647, Ann.Cas. 1912A, 467), the policies were in effect cancelled by the insurance company, and that the defendant was entitled to commissions on the total premiums of the outstanding policies (citing Schlesinger v. Star Ins. Co. of America, 100 Pa.Super. 584; W. R. O'Brien, Inc., v. Vehicle Underwriting Agency Corporation, 175 A. 256, 12 N.J. Misc. 815; T. T. Hay & Bro. v. Union Fire Insurance Co., 167 N.C. 82, 83 S.E. 241, Ann.Cas.1916A, 1129; Johnson v. Button, Insurance Commissioner, 120 Va. 339, 91 S.E. 151; Bothwell v. Employers' Underwriters' Agency, Inc., 145 Md. 36, 125 A. 504; Knight v. Ætna Life Insurance Co., D.C. E.D.Pa., 34 F.2d 805; Independence Indemnity Company v. Dreyfus, 6 Cir., 49 F.2d 599).

The plaintiff distinguishes these cases, and particularly the Pennsylvania case of Schlesinger v. Star Ins. Co. of America, supra (by which, if applicable, we would be bound), on the ground that these involve cancellations by a going and solvent insurance company made in bad faith, and have no application to cancellations resulting by the receivership and by the other facts in the case at bar.

■ It is, however, unnecessary to decide the above question because I have concluded that the plaintiff's claim is barred by the Statute of Limitations of Pennsylvania, Act of March 27, 1713, 1 Smith Law 76, sec. 1, 12 P.S. § 31, which provides for a six-year limitation.

The instant suit was started September 20, 1940. The receivers were appointed April 18, 1933. Whatever obligation the defendant owed to the insurance company was then due.

Plaintiff seeks to overcome the defense of the statute of limitations on two grounds: (1) That the obligation of the defendant is that of a trustee and hence asserts that the statute has no application; and (2) that the filing of the proof of claim by the defendant in the Delaware Chancery Court is an acknowledgment of the debt as of September 27, 1933, and hence tolled the statute.

■ On the first point, it is extremely doubtful if defendant was a trustee. From the facts, it seems that the relationship between the defendant and the insurance company was more like that of a debtor and creditor. See Lifter v. Earle Co., 72 Pa. Super. 173, 176, where the court said: "It may well be doubted whether this course of dealing gave rise to any relation other than that of debtor and creditor, in the absence of any covenant in the agreement that the funds should be kept separate and of any evidence that they were in fact kept separate." However, in any event, this is not the sort of trust that is not affected by the statute of limitations.

■ In Hostetter v. Hollinger, 117 Pa. 606, 611, 12 A. 741, 742, the Supreme Court of Pennsylvania stated the principle applicable: "But the statute of limitations was certainly a bar to the plaintiff's recovery, unless tolled by an acknowledgment of the debt, or a promise to pay it, within six years. It may be conceded that the obligation of Henry Hostetter to Maria Baer was in the nature of a trust; but the remedy for recovery of the money was at law, and the trusts which are not affected by the statute of limitations are only those technical and continuing trusts over which chancery has exclusive jurisdiction. *A person who receives money to be paid to another, or to be applied to a particular purpose, and does not pay it to the person, or apply it to the purpose, intended, is within the operation of the statute of limitations.* Lyon v. Marclay, 1 Watts [Pa.], 271; Finney v. Cochran, 1 Watts & S.

[Pa.], 112 [37 Am.Dec. 450]; Zacharias v. Zacharias, 23 Pa. 452; Fleming v. Culbert, 46 Pa. 498." (Emphasis supplied.)

To the same effect, see Dorrance v. Ryon, 35 Pa.Super. 180.

■ Nor do I agree with plaintiff's contention that the proof of claim executed September 27, 1934, tolled the statute of limitations. The law is well established that there must be a clear, distinct and unequivocal acknowledgment of the debt, consistent with an express or implied promise to pay: Anthracite Trust Co. v. Loughran, 341 Pa. 142, 19 A.2d 61; In re Fix's Estate, 140 Pa.Super. 60, 12 A.2d 826; McKelvey v. Ligonier Township, 128 Pa. Super. 437, 194 A. 330; In re Maniatakis' Estate, 258 Pa. 11, 101 A. 920, L.R.A .1918A, 900; Markee v. Reyburn, 258 Pa. 277, 101 A. 993; Heany v. Schwartz, 155 Pa. 154, 25 A. 1078; Palmer v. Gillespie, 95 Pa. 340, 40 Am.Rep. 657; Yost v. Grim, 116 Pa. 527, 8 A. 925; Sletor v. Oram, 1 Whart., Pa., 106.

■ As a matter of fact, the proof of claim was neither an acknowledgment of the debt nor a promise, express or implied, to pay. It is true that the defendant admits the receipt of premium payments totaling $104,584.82, but it not only says in effect that it does not owe the insurance company that sum, but "We will not pay it, because you owe us a sum in excess of that amount for which we are making a claim herein." The cases that I have cited are only a few of the numerous reported cases on this point negativing the plaintiff's contention and are all very illustrative.

I therefore state the following

### Conclusions of Law

1. The proof of claim filed by the defendant in the Chancery Court of the State of Delaware does not toll the statute of limitations.

2. The claim of plaintiff is barred by the statute of limitations.

3. The plaintiff's complaint is dismissed.