Cappuccio's Estate.

54

Argued October 8, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harpur M. Tobin,* with him *Bernard J. O'Connell,* for appellant.

*Kenneth Souser,* with him *William C. Ferguson, Jr.,* of *Saylor, Slocum & Ferguson,* for appellee.

OPINION BY JAMES, J., December 11, 1935:

This is an appeal by Lucy A. Cappuccio, widow of Angelo Cappuccio, deceased, from the dismissal of exceptions to an adjudication by the orphans' court in allowing a claim of the decedent's mother, Mary Cappuccio, in the sum of $1,500.

Decedent died intestate on January 4, 1933, leaving to survive him his wife, his mother Mary Cappuccio, and several brothers and sisters. Mary Cappuccio, mother of the decedent, presented a claim for loans to the decedent totalling $1,500; $700 in 1921 and $800 in 1923. After a hearing before the auditing judge, the claim was allowed in the sum of $1,500 without interest. Exceptions to the adjudication and a petition for a rehearing were filed which after argument were dismissed and the adjudication confirmed absolutely.

The questions involved on this appeal are whether the proof was sufficient to establish that the statute of limitations had been tolled, and whether appellant was entitled to a rehearing on after-discovered evidence.

Claimant's testimony summarized was as follows: Jennie Cappuccio, daughter of the claimant and sister of the decedent testified as to the loan of $700 in 1921 and the loan of $800 in 1923; that she frequently heard her mother ask the decedent for the money but decedent did not have the money and stated his mother would have to wait, he stated she wouldn't have to worry she would get all the money she gave him; that on April 4, 1932 (recalled as being the Monday following Easter Monday) decedent called at their home and made some comment that he could never find his mother at one place, to which the mother replied, "If she wouldn't of loaned him the $1500, she wouldn't be here and there, she would be in her own home," to which the decedent replied, "Don't worry, mom, I am going to pay you all your $1500 and the interest;" that the mother replied that it was over $2,000 and the decedent then

figured the amount due to be about $1,975; in October 1932, decedent was present at their home when the mother asked him again for the money and that the decedent replied "he just didn't have it then, but the next time he wouldn't come over until he had the money." Her testimony was materially corroborated by Joseph Caruso, Catherine Bondinsky and Vincent Penza. Josephine Joyce testified that in 1929 in the presence of his mother, decedent admitted that he owed his mother $1,500 and that he would pay her; in December 1932, the decedent while ill admitted that he had not paid his mother but that his wife knew all about it and she would pay the mother from moneys he had in a safe deposit box. Thomas M. Recchuti testified that at the request of the mother, arrangements were made for the decedent to come to his office at which time decedent said he owed the money and was going to pay the mother. Mrs. Santa DePasquale testified as to moneys that had been given by claimant to her and her husband for safe keeping, which were deposited in the Philadelphia Saving Fund Society, and was present at the time the $800 had been given to decedent. The records of the bank showed withdrawals of $700 in 1921 and $800 in 1923. As against this testimony the widow testified that the decedent denied owing any money to his mother but she had no knowledge of what went on between the mother and the decedent. In reference to the widow's testimony, the court below in its adjudication stated: "The testimony of this witness may be summed up briefly by saying that she was familiar with her late husband's (the decedent) business and financial affairs, but acknowledged that she was never present when he had any financial transactions with the claimant; that she was present when the witness, Recchuti, had a meeting with decedent, but denied that decedent then and there acknowledged

owing claimant any money, but on the contrary that decedent denied owing any such debt to claimant."

The auditing judge believed the witnesses for the claimant, and on appeal we are bound by his findings and the sole question for us to determine is whether the testimony was sufficient to toll the statute of limitations. "A clear, distinct and unequivocal acknowledgment of a debt as an existing obligation such as is consistent with the promise to pay is sufficient to toll the statute. There must, however, be no uncertainty either in the acknowledgment or in the identification of the debt, and the acknowledgment must be plainly referable to the very debt upon which the action is based, and must be consistent with the terms to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time. The time of payment need not be immediate but the intention to pay must be present: Maniatakis' Est., 258 Pa. 11": Thomas v. Sweeney, 75 Pa. Superior Ct. 322, 324. The testimony offered fully met every requirement of this rule. It was an unequivocal acknowledgment of the debt and a promise to pay. We are not impressed by appellant's contention that the promises alleged to have been made were not consistent to pay on demand. None of the adjudicated cases on this question, of which there are many, hold that the promise must be accompanied by the express words "on demand": McCollum v. McCollum, 86 Pa. Superior Ct. 208. All that is required is that it be consistent with the terms to pay on demand. His acknowledgment of the debt and his promises that, "I am going to pay all your $1500 and the interest"; that "he would pay her," and that "he owed the money and was going to pay his mother," were clearly consistent to pay on demand.

We find no cause for criticism in refusing the rehearing. An application for a rehearing is largely within the discretion of the auditing judge and will not be

reversed except for clear abuse. The petition alleges but two reasons that are necessary to discuss. The first relates to the fact that on April 4, 1932, the date fixed by the sister and other witnesses, on which decedent made a promise, that the time clock of his employer (a motor company) showed that he reported for work at 7:33 A. M. and left his employment at 5:38 P. M. Assuming this to be true, it did not establish that at or near the noon hour decedent had not visited his mother at Hammonton, N. J., nor was it sufficient to discredit the testimony of these witnesses as to the material portions of their testimony. Even though they were mistaken as to the definite date, their credibility was for the auditing judge. Appellant's second reason was that she desired to call her sister, Mrs. Cecelia Paxson, who was present at the meeting with Thomas M. Recchuti, to corroborate her testimony that decedent had denied that he owed any money to his mother. Recchuti had testified that two ladies had accompanied decedent to his office and, therefore, this testimony could not properly be classified as after-discovered evidence. It was appellant's duty to have called her sister and if not in court, the auditing judge would undoubtedly have given her an opportunity to produce the witness. Assuming, however, that the proposed testimony had been introduced, the refusal of the petition by the auditing judge establishes that it would not have been sufficient to have changed his findings.

Decree affirmed.