## Cheponis' Estate.

Argued March 4, 1942.

Before KELLER, P. J.,

BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

Albert B. Carrozza, with him Albert L. Anselmi, for appellant.

Henry Thalenfeld, with him Mose H. Salsburg, for appellee.

OPINION BY KENWORTHEY, J., April 15, 1942:

The Orphans' Court allowed the widow of Anthony Cheponis her widow's exemption and allowed her to take against the will. The executrix has appealed.

Decedent and appellee were married in 1923. In 1933 they entered into a separation and property settlement agreement. Under its terms, decedent paid appellee $2,914.03 and agreed that she might live apart from him anywhere she might choose; that he would in no way molest her; that he would not, without her consent, attempt to visit her; and that he would make no claim against her estate.[1] The agreement contained

---

[1] The material portions of the agreement are as follows: "......
that it shall and may be lawful for her, his said wife, at all times hereafter, to live separate and apart from him; and that he shall and will allow and permit her to reside and be in such place and places, and in such family and families, and with

a release by appellee "of and from all claims, shares, or interest ...... [in his estate], which she now has or may or might have by reason of her said marriage." It contained a release by decedent in substantially identical form.

Appellee offered evidence to show that on or about January 1, 1941, decedent sought a reconciliation; that she refused to consider it except on condition he would cancel the separation agreement; that they mutually agreed to cancel it; and that he thereafter moved into her home where he lived until his death on May 27, 1941. It was conceded appellee never returned any part of the cash paid her under the separation agreement. The court found, "That a condition precedent to the reconciliation was the compliance by the husband with a demand of the wife that the property settlement agreement be cancelled and made void." We are bound by this finding of fact. *Pusey's Estate*, 321 Pa. 248, 260, 184 A. 844; *Cappuccio's Estate*, 120 Pa. Superior Ct. 53, 57, 181 A. 868.[2]

It is always competent for a party to a written contract to show, by an express parol agreement based on sufficient consideration, that the contract was subse-

---

such relations, friends, and other persons, and to follow and carry on such trade or business, as she may from time to time choose or think fit to do; and he shall not nor will not at any time compel her to live with him, or molest, disturb, or trouble her for living separate and apart from him, ...... and that he will not, without her consent, visit her or knowingly enter any house or place where she shall dwell, reside, or be; nor shall or will, at any time hereafter, claim or demand any of her money, etc."

[2] See also *Gongaware's Estate*, 265 Pa. 512, 514, 109 A. 276; *Kovacevich's Estate*, 309 Pa. 268, 270, 163 A. 514; *Kaufmann's Estate*, 281 Pa. 519, 523, 127 A. 133. Compare, however, statements in *Hortz's Estate*, 26 Pa. Superior Ct. 489, 490, that findings are entitled to "much weight" and will only be reversed for clear error; and in *Clabby's Estate*, 308 Pa. 287, 293, 162 A. 207, that findings will not be disturbed "unless there is a manifest abuse of discretion."

quently abandoned in whole or in part. Restatement, Contracts (1932) Secs. 406, 407; *Himeles v. Rose,* 84 Pa. Superior Ct. 363. And whether the parties intended not only to cancel the separation agreement, but that there should be no restitution of the money paid to appellee, was a question of interpretation (Restatement, Contracts Sec. 409; *Ruddy v. Autographic Reg. Co.,* 104 Pa. Superior Ct. 599, 158 A. 308), and although the court made no specific finding on it, no other conclusion was possible under the evidence. The three witnesses who were present and who testified to the express agreement of cancellation, related what purported to be the entire conversation between the parties; neither of the parties made any reference to restitution; and there was no evidence that decedent demanded it during the period of nearly five months between the cancellation agreement and his death.

Appellant contends that the only consideration for the cancellation agreement was the reconciliation and that this was insufficient because, since neither party was at fault, reconciliation was a legal obligation. The contention either ignores the existence of the previous separation agreement, or erroneously assumes that it was invalid. The validity is well recognized. *Scott's Estate* (2), 147 Pa. 102, 110, 23 A. 214; *Com. v. Richards,* 131 Pa. 209, 218, 18 A. 1007. Under it, appellee had no duty to take decedent into her home and care for him in his last illness. And, from his standpoint, he not only got the benefit of that maintenance and care, but his release was cancelled. In our opinion, the relief from the duty to perform mutual, unexecuted undertakings[3] in the separation agreement was sufficient consideration. See Restatement, Contracts Sec. 406a; *Himeles v. Rose,* supra at p. 366.

---

[3] Although the undertakings were negative, they were nevertheless undertakings in the sense they were promises not to do certain things.

In the *Estate of Kesler*, 143 Pa. 386, 22 A. 892, there was an express agreement to cancel an antenuptial contract and it was held that reconciliation alone, where the estrangement was wrongful, did not furnish sufficient consideration to support it. In *Ray's Estate*, 304 Pa. 421, 156 A. 64, it was held that reconciliation alone was not sufficient evidence of an intention to cancel a separation agreement. Both cases are clearly distinguishable. As we have already indicated, in the present case, there was other consideration and an express agreement to cancel.

Although it has not been necessary to consider it in order to dispose of the present appeal, it may be well to point out appellant had no standing to take this appeal in her representative capacity. As executrix, she had no interest in or right to question an order affecting the distribution. It does appear, however, that she was one of the legatees named in the will, and if she were materially affected by this last mentioned rule, we would permit her to continue the appeal in her individual capacity as was done in *Holben's Estate*, 299 Pa. 348, 351, 149 A. 598. See *Hand's Estate*, 288 Pa. 569, 136 A. 864; *Musser's Estate*, 341 Pa. 1, 8, 17 A. (2d) 411.

The order is affirmed.