In re: **ESTATE OF Bernhard S. BLUMENTHAL, Deceased.**

**Appeal of: Leo Blumenthal and Anne B. Proffit, Exceptants/Executors.**

Superior Court of Pennsylvania.

Argued Jan. 16, 2002.
Filed Dec. 6, 2002.

Mitchell A. Kramer, Rydal, for appellants.

Edward J. Hayes, Philadelphia, for appellees.

Before: HUDOCK, KLEIN and BECK, JJ.

HUDOCK, J.

¶ 1 This is an appeal by Leo Blumenthal and Anne B. Proffit, residuary beneficiaries and executors of the Estate of Bernhard S. Blumenthal, deceased, from the order of the orphans' court that dismissed their exceptions to the final accounting and confirmed the adjudication. For the rea-

sons that follow, we affirm in part, reverse in part and remand for proceedings consistent with this memorandum.

¶ 2 The orphans' court has ably summarized the facts and procedural history of this action, as well as the positions of the parties, as follows:

Bernhard S. Blumenthal, died February 22, 1998, leaving a Will dated August 16, 1995, which was duly probated. He was married to Ellin S. Blumenthal at the time of his death, and, was also survived by his two children, namely Leo D. Blumenthal and Anne B. Proffit. He was also survived by his only two grandchildren, namely Connie S. Blumenthal and Wendy J. Blumenthal. His two said children are not children of his surviving spouse.

Letters Testamentary were granted to the accountants on March 5, 1998; proof of publication of the grant of same was submitted[.] . . .

By the terms of his Will . . . the testator gave the sum of Twenty-five Thousand Dollars ($25,000.00) to each of his grandchildren who should survive him for a period of thirty (30) days. He directed that his automobiles should be sold, and, that the proceeds of sale should be distributed as a part of the residue of his estate. He gave his household effects, works of art, furniture and jewelry to his wife, Ellin S. Blumenthal, with a request that she give certain articles of his jewelry to his children, Leo D. Blumenthal and Anne B. Proffit. Items FOURTH and FIFTH of the Will read as follows:

"Cash Bequest to Wife

*FOURTH:* I give to my wife, EL-LIN S. BLUMENTHAL, pursuant to the provision of an Antenuptial Agreement entered into with her on April 29, 1974, a sum of money equal to the amount, if any, by which the fair market value (as finally determined for Federal Estate Tax purposes) of the assets comprising my gross estate, exclusive of insurance on my life and real or personal property owned by my wife and me as tenants by the entireties, shall be greater than Eight Hundred Thousand Dollars ($800,-000.00).

Distribution of Residue

*FIFTH:* I give the rest of my estate in equal shares to my son, LEO D. BLUMENTHAL, and my daughter, ANNE B. PROFFIT. If my son does not survive me for a period of thirty (30) days, however, his share shall be distributed per stirpes, to his issue who do so survive me. If my daughter does not so survive me her share shall be added to the share going to my son or his issue as the case may be."

The testator appointed his children, Leo D. Blumenthal and Anne B. Proffit, to serve as executors of his estate.

It is stated that the family exemption has been claimed by Ellin S. Blumenthal, surviving spouse of the testator, but, has not been allowed.

The instant "Interim" account has been filed in an effort to resolve certain questions arising out of Paragraph 5 of an "Antenuptial Agreement", and, Items FOURTH and FIFTH of the decedent's Will.

The testator and his surviving spouse, hereinafter referred to as "Bernhard" and "Ellin", entered into an "Antenuptial Agreement" which was dated April 29, 1974. Ellin signed the Agreement on April 26, 1974. Bernhard signed the Agreement on April 29, 1974. Ellin and Bernhard were married on May 1, 1974. They remained married, and, lived to-

gether until Bernhard died on February 22, 1998.

Ellin has made a claim against Bernhard's estate under Subparagraph 5(b) of the aforementioned Antenuptial Agreement, which reads as follows:

"(b) Bernhard agrees that on or before his marriage to Ellin she shall be irrevocably designated as beneficiary of his life insurance policy which is identified as the Ward Foods policy on Exhibit "A", which is attached to this Agreement, in the face amount of $200,000.00. If for any reason· that policy is not in force and payable to Ellin at the time of Bernhard's death, Ellin shall be entitled to receive the sum of $200,000.00 from Bernhard's estate in lieu of such insurance proceeds, * (See below)

---

* provided that Ellin and Bernhard are married and living together at the time of Bernhard's death. If Ellin and Bernhard are married and living together at the time this insurance policy may lapse, for whatever reason, prior to Bernhard's death, Bernhard agrees to give to Ellin $200,000.00 in cash or securities having that value."

Bernhard retired from Ward Foods in 1981, and chose not to pay the premiums on the "Ward Foods" policy after his retirement. Accordingly, the face amount of the "Ward Foods" policy dropped from $200,000.00 to $38,700.00. Ellin collected $38,700.00 on the "Ward Foods" Policy at Bernhard's death. She now claims the sum of $161,300.00 from Bernhard's estate under Subparagraph 5(b) of the Antenuptial Agreement. In addition, Ellin takes the position that her claim of $161,300.00 should be paid from the residue which passes to Bernhard's children under item FIFTH of the Will.

Bernhard's children deny that Ellin is entitled to any monies from the estate under the language of Subparagraph

5(b) of the Antenuptial Agreement. In the alternative, they note that Ellin has collected $152,715.91 in life insurance proceeds under policies other than the "Ward Foods" policy, and, assert that she should not receive more than $8,584.09 from the estate [the difference between $200,000.00 and the sum of the Ward Foods policy and the $152,715.91 collected from the other existing life insurance policies]. Bernhard's children also assert affirmative defenses of estoppel, waiver and unjust enrichment. They assert that any ambiguity in Subparagraph 5(b) of the Antenuptial Agreement must be construed against Ellin because her attorney drew the Agreement. Finally, they take the position that any payment to Ellin, under Subparagraph 5(b) of the Agreement, should be paid out of the gift to Ellin under Item FOURTH of Bernhard's Will, and, not out of the residue which passes to them under Item FIFTH of the Will.

Ellin's four children, namely Eric Michelson, Gary Michelson, Mark Michelson and Larry Michelson, have made a claim against Bernhard's estate under Subparagraph 5(d) of the aforementioned Antenuptial Agreement, which reads as follows:

"(d) In any calendar year in which Bernhard makes a gift or gifts to a child or grandchild of Bernhard, he shall also make gifts to each of Ellin's sons. The gift or gifts made in any year to a child or grandchild of Bernhard shall not exceed in amount or fair market value the gift or gifts to any child of Ellin in that year. Bernhard's obligation, under the provisions of this subparagraph (d) to make gifts to Ellin's children shall continue only during such time or times as Bern-

hard and Ellin are married and living together."

Bernhard made a total of $368,917.00 in gifts to his children and grandchildren during his marriage to Ellin. He made a total of $14,917.00 in gifts to Ellin's children and grandchildren during his marriage to Ellin. Ellin's children now claim the sum of $354,000.00 from Bernhard's estate under Subparagraph 5(d) of the Antenuptial Agreement. In addition, Ellin's children take the position that their claim of $354,000.00 should be paid from the residue which passes to Bernhard's children under Item FIFTH of the Will.

Bernhard's children deny that Ellin's children are entitled to any monies from the estate under the language of Subparagraph 5(d) of the Antenuptial Agreement: because Bernhard and Ellin did not intend that Ellin's children should be third party beneficiaries of the Agreement; and, because Ellin's children have not proven the amount of gifts which Bernhard made to them. Bernhard's children also assert affirmative defenses of estoppel, waiver, novation and unjust enrichment. They assert the bar of the statute of limitations. Finally, they take the position that any payment to Ellin's children, under Subparagraph 5(d) of the Agreement, should be paid out of the gift to Ellin under Item FOURTH of Bernhard's Will, and, not out of the residue which passes to Bernhard's children under Item FIFTH of the Will.

As noted the parties take conflicting positions as to the source of payment of the claims which have been made by Ellin and her children. In this regard, it should be noted that item FOURTH of Bernhard's Will is taken from Subparagraph 5(f) of the Antenuptial Agreement, which Subparagraph 5(f) reads as follows:

"(f) Bernhard agrees to give Ellin, by appropriate provision in his will, free of all inheritance and estate taxes, a sum of money equal to the amount, if any, by which the fair market value (as finally determined for federal estate tax purposes) of the assets comprising Bernhard's gross estate, exclusive of insurance on Bernhard's life and real or personal property owned by Bernhard and Ellin jointly or as tenants by the entireties, shall be greater than $800,000.00[.]"

Bernhard's children assert that their father wanted them to receive no less than $800,000.00 from his estate. They assert that said intention is reflected in Items FOURTH and FIFTH of the Will. And, they assert that any ambiguity in Item FOURTH of the Will must be construed against Ellin and her children because Ellin's attorney drew the Antenuptial Agreement, and, because Subparagraph 5(f) of the Agreement is incorporated into Item FOURTH of the Will.

The claimants offered the testimony of Ellin, and, fifteen Exhibits in support of their claims. Bernhard's children offered the testimony of Frank E. Hahn, Jr., Esquire, and Paul C. Heintz, Esquire, as well as five Exhibits, in defense against the claims.

Orphans' Court Opinion, 1/23/01, at 2–7.

¶ 3 On January 23, 2001, the court filed its adjudication confirming the account. As part of its adjudication, the court found in favor of Ellin Blumenthal, Eric Michelson, Gary Michelson, Mark Michelson and Larry Michelson on their objections to the account. The court then awarded the sum of $161,300.00 from the estate to Ellin Blumenthal under subparagraph 5(b) of the antenuptial agreement and to her sons, $354,000.00 pursuant to subparagraph 5(d)

of the agreement. All payments were ordered to be paid out of the residue of the estate, which monies would have otherwise passed through the residuary estate to Bernhard's children, Leo D. Blumenthal (Blumenthal) and Anne B. Proffit (Proffit). Blumenthal and Proffit, in their capacities as executors, filed exceptions to the court's adjudication on February 12, 2001. On May 25, 2001, the orphans' court dismissed the exceptions and confirmed the account absolutely. This timely appeal followed.[1]

¶ 4 On appeal, Blumenthal and Proffit present the following issues:

1. If a court holds that a contract or will provision is clear and unambiguous, does the court commit an error of law by relying upon extrinsic evidence to interpret the terms thereof?

2. If a court holds that a contract or will provision is clear and unambiguous, does the court commit an error of law by failing to give full effect to the plain, ordinary meaning of the words chosen to express the intent of the parties?

3. Where no provision of a contract or will provides a bequest to a claimant or creates a debt against the estate, does the court commit an error of law in ordering payment from the estate?

4. Where a will provides for a residuary estate of a specific amount, is it an error of law for the court to reduce that amount by permitting additional claims against that portion of the estate?

5. Is it an error of law for a court to permit payment of a claim barred by the statute of limitations?

6. If a court commits a plain error of law in its adjudication, may [Blumenthal and Proffit] rely upon arguments regarding the court's error to support reversal of the decision if such contentions were not raised prior to the adjudication?

Blumenthal and Proffit's Brief at 3.[2]

¶ 5 Initially, we note our standard of review of the findings of an orphans' court:

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court

---

**1.** We note that while Blumenthal and Proffit did not have standing to file their exceptions and appeal in their capacities as co-executors, this error is not fatal in that they do have standing to take such actions in their individual capacities as affected beneficiaries of the estate. *See In re Cheponis' Estate,* 148 Pa.Super. 515, 25 A.2d 779, 781 (1942) (providing that where orphans' court dismissed an executrix's exceptions to a claim by the widow for the widow's exemption and to the widow's election to take against her deceased husband's will, the executrix as such had no standing to take an appeal from the order of dismissal as affecting distribution of the estate, but where it appeared that the executrix was also a legatee, she would be permitted to continue the appeal on her individual capacity if she were affected by the bar).

**2.** While Blumenthal and Proffit have set forth six issues in their statement of questions on appeal, these issues can be grouped into three claims: (1) the orphan's court erred in awarding Ellin Blumenthal $161,300.00 from the estate pursuant to subparagraph 5(b) of the antenuptial agreement; (2) the court erred in awarding the sum of $354,000.00 to Eric Michelson, Gary Michelson, Mark Michelson and Larry Michelson from the estate under subparagraph 5(d) of the antenuptial agreement; and (3) because the will provides for a residuary estate of a specific amount, it was error of law for the court to reduce that amount by ordering Ellin and her sons be paid from the residuary estate. We will address these claims accordingly.

sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of the discretion.

*In re Estate of Geniviva,* [450 Pa.Super. 54, 675 A.2d 306, 310 (1996) ] (internal citations omitted). However, "we are not constrained to give the same deference to any resulting legal conclusions." *Id.* "[W]here the rules of law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's] decree." *Horner v. Horner,* 719 A.2d 1101, 1103 (Pa.Super.1998) (discussing standard of review for courts of equity).

*In re Estate of Harrison,* 745 A.2d 676, 678–79 (Pa.Super.2000), *appeal denied,* 563 Pa. 646, 758 A.2d 1200 (2000).

¶ 6 Blumenthal and Proffit first argue that the orphans' court erred in concluding that "Ellin Blumenthal is due the additional sum of $161,300 from the residuary estate to compensate her for the difference between the $200,000.00 face amount of the 'Ward Foods' life insurance policy on May 1, 1974 and the $38,700 face amount of the policy on the date of Bernhard's death[.]" Blumenthal and Proffit's Brief at 15. They contend that "the [c]ourt's factual finding that the Ward Foods policy had not lapsed during Bernhard's life, as well [as] the language of Subparagraph 5(b) of the antenuptial agreement" was irreconcilable with the court's award to Ellin Blumenthal. *Id.* Moreover, Blumenthal and Proffit assert that the court erred in reviewing and relying upon extrinsic evidence pertaining to the Ward Food policy provision when the court expressly found the language of the provision unambiguous.

¶ 7 Antenuptial agreements are contracts and should be interpreted using contract principles. *Raiken v. Mellon,* 399 Pa.Super. 192, 582 A.2d 11, 13 (1990). "When interpreting a prenuptial agreement, the court, as in dealing with an ordinary contract, must determine the intention of the parties. When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement." *Id.* "The court must construe a contract as written and may not modify the plain meaning of the contract under the guise of interpretation." *Tuthill v. Tuthill,* 763 A.2d 417, 420 (Pa.Super.2000), *appeal denied,* 565 Pa. 675, 775 A.2d 808 (2001). However, where an ambiguity exists, "the courts are free to construe the terms against the drafter and to consider extrinsic evidence in so doing." *Raiken,* 582 A.2d at 13. If a contract "is fairly susceptible of different constructions and capable of being understood in more than one sense[,]" it will be found to be ambiguous. *Tuthill,* 763 A.2d at 420. "It is the function of the court to decide, as a matter of law, whether the contract terms are clear or ambiguous. The fact that the parties have different interpretations of a contract does not render the contract ambiguous." *Id.* (citations omitted).

¶ 8 In the present case, the language of Subparagraph 5(b) provides that Ellin "shall be irrevocably designated as beneficiary of [Bernhard's] life insurance policy which is identified as the Ward Foods policy on Exhibit 'A', which is attached to this Agreement, in the face amount of $200,000.00. If for any reason that policy is not in force and payable to Ellin at the time of Bernhard's death, Ellin shall be entitled to receive the sum of $200,000.00 from Bernhard's estate in lieu of such insurance proceeds[.]" This provision remained valid so long as "Ellin and Bernhard [were] married and living together at the time of Bernhard's death." The paragraph further provided that if, during the

marriage and while living together, the insurance policy lapsed prior to Bernhard's death, Bernhard then agreed to give to Ellin an *inter vivos* gift of $200,000.00 in cash or securities having that value. The orphans' court determined that the language of this subparagraph "shows Bernhard's clear intent that Ellin should receive $200,000.00 from his estate if she did not receive that amount under the 'Ward Foods' policy." Orphans' Court Opinion, 1/23/01, at 15. The court thus interpreted the phrase, "that policy" to mean "a policy having a face amount of $200,000.00, which face amount is to be paid to Ellin from the estate if it is not paid to her under the policy." *Id.* at 16. In arriving at this interpretation, the court relied upon extrinsic evidence, primarily in the form of testimony from Ellin that "Bernhard assured her that she would get $200,000.00 from that policy." *Id.*

¶ 9 We disagree with the trial court that the language of subparagraph 5(b) is clear and unambiguous. We do agree, however, with the court's interpretation of the language contained therein. The paragraph clearly provides that upon Bernhard's death, Ellin is entitled to the proceeds of the Ward Foods policy as the designated beneficiary of the policy. The paragraph also provides for the contingency that, in the event the policy should lapse during Bernhard's lifetime, Ellin would be compensated in the sum of $200,000.00. The policy further provides for the contingency that if the policy was not in force and payable at the time of Bernhard's death, Ellin would be entitled to receive from Bernhard's estate the sum of $200,000.00 in lieu of the insurance proceeds. The ambiguity arises in the interpretation of the phrase "that policy." The words "that policy" could reasonably be interpreted to mean the Ward Foods policy, not a specific amount payable from the policy, or the phrase could be interpreted to mean a policy having a face amount of $200,000.00. Thus, because the terms of the paragraph were ambiguous, the orphans' court's reliance upon extrinsic evidence to aid in its interpretation of the phrase was proper.

¶ 10 The court considered and found credible Ellin Blumenthal's testimony that Bernhard had assured her that she would receive $200,000.00 from that policy. The court further found the October 8, 1980, correspondence written by Bernhard and addressed to his attorney, Mr. Hahn, supported Ellin's testimony. The correspondence provided that, notwithstanding other insurance policies in which Bernhard had named Ellin beneficiary, "[t]he fact that the 'Ward' policies won't total 200,000, as agreed, [led him] to feel [he] should transfer 100,000 in some sort of security to Ellin." The court, thus, reasoned that because "Bernhard recognized that he still had an obligation to pay $200,000.00[,]" after the face amount of the policy dropped to $38,700.00, and because he acknowledged that his other life insurance policies would not alleviate this obligation, Bernhard had intended, at the time of entering into the antenuptial agreement, that, in the event that the face amount of the policy fell below $200,000, upon his death, Ellin would be reimbursed the difference from his estate. Orphans' Court Opinion, 1/23/01, at 16. Therefore, the court concluded that the phrase "that policy" meant a policy with a face value of $200,000.00. This interpretation is supported by the evidence presented at trial. Accordingly, we affirm the order of the court to the extent that it awarded Ellin Blumenthal the sum of $161,300.00 from the residuary estate as reimbursement for the difference between $200,000.00 and the $38,700.00 that she received from the Ward Foods policy.

¶ 11 Next, Blumenthal and Proffit challenge the court's award of the sum of $354,000.00 to Eric Michelson, Gary Michelson, Mark Michelson and Larry Michelson from the estate under subparagraph 5(d) of the antenuptial agreement. In support of their position, they provide four arguments: (1) the plain language of subparagraph 5(d) of the antenuptial agreement provides that Bernhard's obligation to equalize gifts to Ellin's children was extinguished by his death; (2) no provision of the probated will contemplates a gift to Ellin's children from the estate; (3) Bernhard's purported representation to Ellin that gifts to her children would be equalized upon his death was not only improper extrinsic evidence but also cannot reasonably be interpreted as anything other than a revocable promise to provide for them in his will; and (4) it was an error of law for the court to fail to dismiss the Michelsons' claims as barred by the statute of limitations.

¶ 12 As set forth above, subparagraph 5(d) of the antenuptial agreement provides that "[i]n any calendar year in which Bernhard makes a gift or gifts to a child or grandchild of Bernhard, he shall also make gifts to each of Ellin's sons. The gift or gifts made in any year to a child or grandchild of Bernhard shall not exceed in amount or fair market value the gift or gifts to any child of Ellin in that year." With regard to the duration of the gift equalization, the agreement states, "Bernhard's obligation, under the provisions of this subparagraph (d) to make gifts to Ellin's children shall continue only during such time or times as Bernhard and Ellin are married and living together."

¶ 13 At trial, Ellin testified that she never told her children of the existence of the antenuptial agreement. She further testified that at the time the gifts were given to Bernhard's children and grandchildren she was aware of the disparity and, as such, questioned Bernhard about the disparity. She stated that Bernhard told her "it would be far better if he invested the money, he controlled the money, because he knew that [her] children would get it on his death, when they would need it." N.T., 10/10/00, 61. She explained that her children did not need it at that time because two of her children are physicians, one is a lawyer and the other one was in graduate school studying to become a psychologist. She further acknowledged that, based on Bernhard's assurances, she did not feel it necessary to formally challenge the gift disparities. Blumenthal and Proffit's counsel had earlier objected to the testimony of Ellin as to Bernhard's alleged conversations with her on the basis of the Dead Man's Statute. The court ruled that such testimony was admissible because the estate had taken Ellin's deposition during the discovery process. N.T., 10/10/00, at 42. *See generally, Perlis v. Kuhns*, 202 Pa.Super. 80, 195 A.2d 156 (1963). The orphans' court thus relied exclusively on this evidence in its determination that the Michelsons, as third party beneficiaries to the antenuptial agreement, were entitled to recover $354,000.00 from the estate to compensate for gifts received by Bernhard's family between the years 1980 and 1995. Specifically, in finding that the statute of limitations did not bar the Michelsons' claims, the court reasoned:

During Bernhard's lifetime, Ellin never told her children of the existence of the Antenuptial Agreement, or, of Bernhard's obligations to them under Subparagraph 5(d) of the Agreement. Bernhard told Ellin that her children would get their money on his death. Even if Ellin's knowledge of the disparity in gifts is imputed to her children, her justifiable reliance upon Bernhard's statements leads to the inescapable con-

clusion that his estate is estopped from asserting that the statute of limitations began to run in his lifetime. Since the statute of limitations did not begin to run until Bernhard's death on February 22, 1998, Ellin's children have brought their claim well within the applicable four year period of limitations on contract claims. *See* 42 Pa.C.S.A. § 5525. Orphan's Court Opinion, 1/23/01, at 21.

¶ 14 While Blumenthal and Proffit are correct in their assertions that the obligation of Bernhard to equalize gifts ceased upon his death and that the will did not provide for any bequests or devises to the Michelsons, the court was likewise correct that the Michelsons, as third-party beneficiaries, could file a claim against the estate for Bernhard's breach of the antenuptial agreement. The court, however, erred in determining that Ellin's testimony was sufficient to estop Blumenthal and Proffit from asserting the statute of limitations as a defense to the Michelsons' claims.

¶ 15 It is well established that the rights of a donee beneficiary who obtains rights as a third-party beneficiary of a contract may arise no higher than the rights of the promisor to the contract. *Zimnisky v. Zimnisky*, 210 Pa.Super. 266, 231 A.2d 904, 907 (1967). *See also Johnson v. Pennsylvania National Insurance Companies*, 527 Pa. 504, 508, 594 A.2d 296, 299 (1991) (same); *General Accident Insurance Company of America v. Parker*, 445 Pa.Super. 300, 665 A.2d 502, 504 (1995) (same); *Jewelcor Jewelers and Distributors, Inc. v. Corr*, 373 Pa.Super. 536, 542 A.2d 72, 80 (1988) (same). Moreover, the third-party beneficiary is subject to the same limitations which may be asserted between the promisor and promisee. *Id.* Accordingly, because Ellin was aware of the disparity in gift giving at the time the gifts were made to Bernhard's children

and grandchildren, her decision to not enlighten her children to the provision until a time remote to the agreement does not toll the statute of limitations for the children.

¶ 16 In addition, Ellin's testimony that she refrained from enforcing the gift equalization provision of the antenuptial agreement because Bernhard had told her that "it would be far better if he invested the money, ... because he knew that [her] children would get it on his death, when they would need it[,]" is insufficient to toll the statute of limitations. This one vague statement by Bernhard, without more, cannot reasonably be interpreted to have lulled Ellin into a false sense of security and to abandon her rights under the terms of the antenuptial agreement by inaction. As such, Ellin's alleged reliance on this statement is unfounded. *See Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 436, 457 A.2d 502, 503–04 (1983) (providing that "[t]he two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement"; "the burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence"). Thus, Blumenthal and Proffit are not estopped from asserting the statute of limitations. Consequently, because the end of each calendar year starts the running of the statute of limitations on the gifts received by Bernhard's children and grandchildren in that year, we find that the Michelsons' claims which are based on gifts prior to 1995 are barred by the statute of limitations. Any claims by the Michelsons regarding a disparity in gift equalization in the year 1995 are viable since their claim was filed with the estate in July 1999. Therefore, we reverse the orphan's court's decision to the extent that it awarded monies to the Michelsons for gift equalization in the years prior to 1995. We, however, affirm the court's award for

the Michelsons' claim for the disparity in gifts given in the calendar year 1995.

¶ 17 Next, we must determine out of which part of the estate Ellin's award, compensating her for the depletion of the Ward Foods policy, and the Michelsons' award for gift disparity shall be deducted. Blumenthal and Proffit contend that any awards should come out of Ellin's bequest and not the residuary estate of which they are the named beneficiaries. In support of this position, they assert that paragraphs FOURTH and FIFTH of the will provides for a specific residuary amount of $800,000.00 to which they are guaranteed. In paragraph FOURTH of the will, Bernhard gives to Ellin, "pursuant to the Antenuptial Agreement ... a sum of money equal to the amount ... by which the fair market value ... of the assets comprising [his] gross estate ... shall be greater than Eight Hundred Thousand Dollars ($800,-000.00)." In paragraph FIFTH, Bernhard gives the remainder of his estate in equal shares to Blumenthal and Proffit.

¶ 18 It is well settled that " '[t]he will must control the distribution of the estate, and when [its] language is clear and explicit, [its] intention thus plainly expressed must be obeyed regardless of any apparent or real inequalities produced among the legatees.' " *In re Estate of Jones*, 796 A.2d 1003, 1007 (Pa.Super.2002) (quoting *In re Brown's Estate*, 208 Pa. 161, 163–64, 57 A. 360, 361 (1904)). Similarly, it is well established that when " 'a testator in his will gives specified property or a share of his estate in exact or substantial compliance with the terms of his obligations under an inter vivos property settlement [or antenuptial agreement] made with his wife, *that wife is a creditor* of his estate and not a legatee under his will.' " *In re Estate of Zeitchick*, 426 Pa. 171, 231 A.2d 131, 133 (1967) (quoting *In re Estate of Pratt*, 422 Pa. 446, 450, 221 A.2d 117,

119 (1966)). "[C]onsequently, the wife's claim is superior to the claims of other legatees and devisees." *In re Estate of Mathay*, 463 Pa. 486, 495, 345 A.2d 623, 628 (1975) (citing *Estate of Zeitchick, supra*). Moreover, "property devised or bequeathed in a residuary clause or property disposed of in the form of a general bequest must abate before a specific devise or bequest in the payment of the decedent['s] debts, funeral expenses and the cost of administering the estate." *In re Woolett's Estate*, 461 Pa. 703, 707, 337 A.2d 837, 839 (1975). *See also* 20 Pa.C.S.A. § 3541 (entitled "Order of abatement").

¶ 19 Applying these principles to the facts of the instant case, it is apparent that item FIFTH of the will is a residuary clause and that Blumenthal and Proffit's devise is within that clause. Thus, their "devise was to be fulfilled only to the extent possible from assets *remaining* after satisfaction of all other non-residuary legacies, debts and administrative costs." *In re Estate of Mathay*, 463 Pa. at 494, 345 A.2d at 627. Because Ellin's devise, in paragraph FOURTH, originates in the antenuptial agreement, she is a creditor of the estate and not a legatee whose devise cannot be abated in payment of other creditors. Thus, the orphans' court properly awarded payment of the claims from the residuary estate.

¶ 20 In summary, we affirm the adjudication of the court to the extent that it awarded Ellin the sum of $161,300.00 from the residuary estate. We reverse the orphans' court's decision to the extent that it awarded monies to the Michelsons for gift equalization in the years prior to 1995. We, however, affirm the court's award for the Michelsons' claim for the disparity in gifts given in the calendar year 1995 and its deduction of this amount from the residuary estate.

¶ 21 Order affirmed in part, reversed in part, and matter remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

¶ 22 KLEIN, J., files a Concurring and Dissenting Opinion.

KLEIN, J., Concurring and Dissenting.

¶ 1 I join in that part of the majority's decision that affirms the orphans' court order awarding Ellin the difference from the reduced face value of the life insurance policy issued by Ward Foods. I disagree, however, with the majority's determination of the Michaelsons' claims.

¶ 2 The orphans' court had determined that Ellin's testimony was sufficient to estop Blumenthal and Proffit from asserting the statute of limitations as a defense to the Michaelsons' claims. I agree with this. I also agree with the majority's recognition that the Michaelsons, as intended third-party beneficiaries, are limited to Ellin's rights under the contract. What the majority fails to recognize, however, is that Ellin's testimony established that there was a modification of the agreement, that is, that "equalization" would occur at Bernhard's death. Clearly, Ellin knew of the disparity and was reassured by her husband that, relative to her children, he was in the better position to invest the money and that "[her] children would get it on his death, when they would need it." N.T., 10/10/00, p. 61. What the majority also fails to recognize is that its decision implies that Ellin should have pursued legal action during Bernhard's lifetime, while they were married, to enforce Bernhard's obligation under the antenuptial agreement. It is certainly not the policy of this Commonwealth to encourage intra-family litigation, and neither should it be a by-product of this decision.

¶ 3 Ellin's deposition testimony establishes that she never told her children of Bernhard's obligation under the agreement, that when she talked with Bernhard about the disparity in gifts, he reassured her that her children would receive the money upon his death. Relying upon that, and likely upon her desire to avoid splintering her family, Ellin's reliance was justified.

¶ 4 This is not to suggest that Bernhard's statement was intended to deceive Ellin. The law of estoppel does not require a fraud in the strictest sense. Our Supreme Court stated in *Schwab v. Cornell*, 306 Pa. 536, 160 A. 449, 450 (1932):

If the circumstances are such that a man's eyes should have been open to what is occurring, then the statute begins to run from the time when he could have seen, but if by concealment, through fraud *or otherwise,* a screen has been erected by his adversary which effectually obscures the view of what has happened, the statute remains quiescent until actual knowledge arises. (emphasis in original).

I would find, therefore, as the orphans' court did, that the estate was estopped from asserting that the statute of limitation commencing in Bernhard's lifetime. *See Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 204 A.2d 473 (1964) (in order for doctrine of estoppel to be applicable in bar of statute of limitations, it suffices that fraud in the broadest sense, including an unintentional deception, be proved; the criterion is not the intention of the party estopped, but the natural effect upon the other party).

¶ 5 Bernhard died in February, 1998; Ellin's children brought their claim against the estate well within the four year limitation period. 42 Pa.C.S.A. § 5525. I would affirm the orphans' court order.