J-A01023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALBERT BUONCRISTIANO, MARY BUONCRISTIANO, AND NORTH FACE LIVING TRUST | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : : : | |
| | : | No. 1389 EDA 2024 |
| T-MOBILE NORTHEAST, LLC, AND T-MOBILE USA, INC. | : : : | |

Appeal from the Order Entered April 17, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  230702681

BEFORE:  DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:                          **FILED MAY 6, 2025**

Appellants, Albert Buoncristiano, Mary Buoncristiano, and North Face Living Trust ("NFLT"), appeal from the order entered in the Philadelphia County Court of Common Pleas, which sustained the preliminary objections filed by Appellees, T-Mobile Northeast, LLC ("T-Mobile") and T-Mobile USA, Inc. ("T-Mobile USA"), and dismissed Appellants' amended complaint with prejudice.  We affirm.

The relevant facts and procedural history of this case are as follows.  On January 25, 2024, Appellants filed an amended complaint against Appellees, alleging two counts of breach of contract.  The amended complaint alleged the following factual basis to support Appellants' claims.  Mr. and Ms. Buoncristiano owned the property located at 3180 Grant Avenue, Philadelphia

PA 19114. On December 28, 2007, Mr. Buoncristiano executed a lease agreement with T-Mobile, which permitted T-Mobile the use of a portion of the property to construct and maintain a cellphone tower. Pursuant to the lease, T-Mobile USA made monthly payments to Mr. Buoncristiano until August 2011. In August 2011, Mr. Buoncristiano assigned his interests in the lease to Albert's Restaurant, Inc., informed T-Mobile of the change, and pursuant to T-Mobile's instruction, filed a W-9 tax form with the updated information.[1] Thereafter, T-Mobile USA made monthly payments to Albert's Restaurant, Inc. In February 2017, Mr. Buoncristiano informed T-Mobile that he assigned the interests in the lease to NFLT and filled out a W-9 form with the updated information.[2] Mr. and Mrs. Buoncristiano are the trustees of NFLT. Subsequently, T-Mobile USA made monthly payments to NFLT.

On April 5, 2018, Mr. and Mrs. Buoncristiano sold the property at issue to Noor Salam. Mr. Salam later sold the property to Goubaa Investments, LLC, on June 19, 2019. After September 2019, T-Mobile ceased making monthly payments to NFLT. Appellants alleged in their amended complaint

---

[1] Although it is unclear from the record what specific relationship Mr. Buoncristiano had in relation to Albert's Restaurant, Inc., there does not appear to be any dispute that Mr. and Mrs. Buoncristiano controlled and/or benefitted from the payments made by T-Mobile to Albert's Restaurant, Inc.

[2] Appellants claim in their brief that Mr. Buoncristiano and T-Mobile intended NFLT to be a third-party beneficiary to the contract. Nevertheless, we present the facts as represented in Appellants' amended complaint, which states that "ownership of the cell tower lease" was transferred to NFLT. (*See* Amended Complaint, filed 1/25/24, at 3) (unpaginated).

that they did not sell or assign NFLT's interests in the lease agreement to any other party and as such, Appellees breached the terms of the lease agreement by discontinuing monthly payments to NFLT.

On February 14, 2023, Appellees filed preliminary objections, asserting that pursuant to the terms of the lease agreement and the deeds transferring the property, Appellants did not have a continued interest in the property or the lease agreement. On April 17, 2024, the court sustained Appellees' preliminary objections and dismissed Appellants' amended complaint with prejudice. Appellants filed a timely notice of appeal on May 15, 2024. On May 16, 2024, the court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellants timely complied on June 5, 2024.

Appellants raise the following issue for our review:

> Did the trial court commit an error of law and/or abuse of discretion by sustaining [Appellees'] preliminary objections [and] dismissing Appellants' [amended] complaint with prejudice?

(Appellants' Brief at 4).

Appellants contend that they did not sell NFLT's interest in the lease agreement when they sold the property. Appellants argue that Appellees, on two prior occasions, gave specific instructions and set an expectation for Appellants on the procedure that must be undertaken to transfer their ownership rights under the lease agreement. Appellants claim that they reasonably relied on this established procedure when they sold the property,

and they believed that the ownership interests as to the lease agreement would not transfer with the property. Appellants assert that NFLT was established as a third-party beneficiary of the lease agreement and continued to be so even after the sale of the property. Appellants conclude that their amended complaint properly set forth a factual basis for a breach of contract action, and the court erred in sustaining Appellees' preliminary objections and dismissing their amended complaint. We disagree.

The following principles govern our review of an order sustaining preliminary objections:

> Our standard of review mandates that on an appeal from an order sustaining preliminary objections which would result in the dismissal of suit, we accept as true all well-pleaded material facts set forth in the [a]ppellant's complaint and all reasonable inferences which may be drawn from those facts. This standard is equally applicable to our review of [preliminary objections] in the nature of a demurrer. Where, as here, upholding sustained preliminary objections would result in the dismissal of an action, we may do so only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. We review for merit and correctness—that is to say, for an abuse of discretion or an error of law. This case was dismissed at the preliminary objections stage on issues of law; our scope of review is thus plenary.

*Marks v. Nationwide Ins. Co.*, 762 A.2d 1098, 1099 (Pa.Super. 2000), *appeal denied*, 567 Pa. 751, 788 A.2d 381 (2001) (internal citations omitted) (quoting *Donahue v. Federal Express Corp.*, 753 A.2d 238, 241 (Pa.Super. 2000)).

- 4 -

"A lease is defined as a contract by which a rightful possessor of real property conveys the right to use and occupy the property in question for exchange of consideration[.]" ***Fraport Pittsburgh, Inc. v. Allegheny County. Airport Authority***, 296 A.3d 9, 15 (Pa.Super. 2023) (citation and quotation marks omitted). In interpreting a contract, "[t]he intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." ***Thomas Rigging & Const. Co. v. Contraves, Inc.***, 798 A.2d 753, 755 (Pa.Super. 2002) (citation omitted). "[W]hen the language of a contract is clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document," and "this Court need only examine the writing itself to give effect to the parties' understanding. [We] must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." ***Stephan v. Waldron Elec. Heating & Cooling LLC***, 100 A.3d 660, 665 (Pa.Super. 2014) (citation omitted).

Regarding the rights of a third-party beneficiary to a contract, this Court has stated:

> It is well established that the rights of a donee beneficiary who obtains rights as a third-party beneficiary of a contract may arise no higher than the rights of the promisor to the contract. Moreover, the third-party beneficiary is subject to the same limitations which may be asserted between the promisor and promisee.

***In re Est. of Blumenthal***, 812 A.2d 1279, 1289 (Pa.Super. 2002) (citations omitted).

Additionally, "[w]hen construing a deed, a court's primary object must be to ascertain and effectuate what the parties themselves intended by first examining the meaning of plain words of the deed itself." ***Grove v. Perry A.***, 244 A.3d 823, 826 (Pa.Super. 2021), *appeal denied*, 668 Pa. 249, 258 A.3d 1145 (2021) (citation and internal quotation marks omitted).

> [C]ertain rules are applicable in the construction of deeds. Among such rules are those providing: **(1) that the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words**; (2) effect must be given to all the language of the instrument and no part shall be rejected if it can be given a meaning; (3) the language of the deed shall be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

***Id.*** (citation omitted) (some emphasis in original). A deed conveying a property, which does not specifically reserve to the seller any rights in the property, "includes the conveyance of all rights attendant to the property, including the right to lease the property." ***Id.*** at 827.

Instantly, the trial court found that the unambiguous terms of the lease agreement and the deeds transferring the property made clear that Appellants did not retain rights under the lease agreement after they sold the property. The lease agreement provides that "[t]his lease and the easements granted herein shall run with the land, and shall be binding upon and inure to the benefit of the parties, their respective successors, personal representatives

and assigns." (Amended Complaint-Exhibit B, filed 1/25/24, at 4). Therefore, the clear, unambiguous language of the lease agreement sets forth that the rights and obligations under the lease agreement will transfer with the property.[3] ***See Stephan, supra***.

Additionally, the deed transferring the property from Mr. and Mrs. Buoncristiano to Mr. Salam provides, in relevant part:

> …Grantors [(Mr. and Mrs. Buoncristiano)] … do grant, bargain, and sell, release and confirm unto the said Grantee [(Noor Salam)], as sole owner,

_____

[3] Appellants further cite to the section of the lease agreement titled "Assignment and Subleasing," which states:

> Tenant shall have the right to assign or otherwise transfer this Lease and the Easements (as defined above) to any person or business entity which: (i) is FCC licensed to operate a wireless communications business; (ii) is a parent, subsidiary, or affiliate of Tenant or Tenant's parent; (iii) is merged to consolidated with Tenant; or (iv) acquired more than fifty percent (50%) of either an ownership interest in Tenant or the assets or Tenant in the "Metropolitan Trading Area" or "Basic Trading Area" (as those terms are defined by the FCC) in which the Property is located. Under such assignment, Tenant shall be relieved of all liabilities and obligations hereunder and Landlord shall look solely to the assignee for performance under this Lease and all obligations hereunder. Tenant may otherwise assign this Lease upon written approval of Landlord, which approval shall not be unreasonably delayed, withheld, conditioned or denied. Tenant may sublease the Premises, upon written notice to Landlord.

(Amended Complaint-Exhibit B, filed 1/25/24, at 4). Nevertheless, Appellants fail to explain how this section supports their argument as it only sets forth T-Mobile's right to assign its rights under the lease. This section does not in any way implicate Appellants' interest in the lease agreement after the property has been sold.

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected,

\* \* \*

BEING known as No. 3180 Grant Avenue,

\* \* \*

Together with all and singular the building with the improvements, ways, streets, alleys, driveways, passages, waters, water-courses, **rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits therefor, and all the estate, right, title, interest, property, claim and demand whatsoever of the said grantors, as well at law as in equity, of, in and to the same**,

To have and to hold the said lot or piece of ground described above, with the buildings and improvements, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto said Grantee, heirs and assigns, to and for the only proper use and behoof of the said Grantee, heirs and assigns, forever,

And the said Grantors, for themselves and their heirs, executors and administrators, do, by these presents, covenant, grant and agree, to and with the said Grantee, its successors and assigns, that the said Grantors, for themselves and their heirs, executors, and administrators, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, **against the said Grantors, for themselves and their heirs, executors and administrators, and against all and every other person and persons whosoever lawfully claiming or to claim the same or any part thereof, by, from or under him, her, it, or any of them, shall and will warrant and forever defend.**

(Amended Complaint-Exhibit H, filed 1/25/24, at 1-3) (emphasis added). The deed did not specify that Mr. and Mrs. Buoncristiano retained any interests associated with the property, including the interests in the lease agreement with T-Mobile. The deed transferring the property to Goubaa Investments, Inc. contained language nearly identical to that quoted above and did not otherwise specify that any interests in the property were retained by Mr. and Mrs. Buoncristiano.

Rather, the clear language of the deed states that all interests in the property, including the right to lease the property and collect rent from any existing leases on the property, transferred to Mr. Salam, and subsequently, to Goubaa Investments, Inc., when the property was sold. **Compare Grove, supra** (holding that seller of property was entitled to receive rent from preexisting lease with company maintaining cellphone tower on property because deed transferring property to buyer specifically reserved right for seller to continue receiving rent pursuant to lease; seller did not have right to amend and extend lease because deed did not reserve right for seller to lease property and that right transferred to buyer upon sale of property). As such, Mr. and Mrs. Buoncristiano did not retain any rights or interests under the lease agreement upon the sale of the property.[4] Additionally, even if NFLT

_____

[4] Appellants claim that there is a factual dispute as to whether they transferred their rights under the lease agreement during the sale. Appellants argue that T-Mobile previously set forth a certain procedure when Mr. Buoncristiano
*(Footnote Continued Next Page)*

was an intended third-party beneficiary to the contract, NFLT cannot claim greater rights under the lease agreement than what was held by Mr. and Mrs. Buoncristiano. ***See In re Est. of Blumenthal, supra***. On this record, we agree with the trial court that Appellants failed to allege facts in their amended complaint to support a cause of action. As such, we discern no error of law or abuse of discretion in the court's decision to sustain Appellees' preliminary objections and dismiss Appellants' amended complaint with prejudice. ***See Marks, supra***. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/6/2025

---

previously assigned his rights under the lease and this procedure was not followed following the sale of the property. Nevertheless, any procedure that was established between Mr. Buoncristiano and T-Mobile is irrelevant to whether the Buoncristianos transferred all their interests in the property in the deed transferring the property to Mr. Salam. The unambiguous terms of the deed control in that determination and thus, there is no factual dispute to resolve.

- 10 -